[Civil No. 330. Filed January 25, 1893.]

[33 Pac. 712.]

W. T. GRAY et al., Defendants and Appellants, v. WILLIAM H. ROBINSON, Plaintiff and Appellee.

1. CROPPER'S CONTRACT.—A contract between plaintiff and Thomas, whereby plaintiff agreed to furnish land, water, and seed, and Thomas agreed to sow, irrigate, cultivate, harvest, thresh, and sack all grain grown at his own expense, and that title should remain in the plaintiff until certain portions of the grain were delivered to the plaintiff, and that then, and not before, the remainder should be paid to Thomas, and that at all times the land should be deemed in the possession of plaintiff, and if Thomas failed to perform his part of the contract in a diligent and workmanlike manner, plaintiff might perform the same himself, and all rights of Thomas thereupon should cease, does not create the relation of landlord and tenant, but is a "cropper's" contract.

2. SAME—LEASE—DETERMINATION DEPENDENT UPON WHETHER OR NOT INTEREST IN LAND IS CREATED—ROMERO V. DALTON, 2 ARIZ. 210, 11 PAC. 863, CITED.—The character of a contract to cultivate land on shares is to be determined by ascertaining the intention of the parties as expressed in the language used. If it imports a present demise of any character by which any interest in the land passes to the occupant the contract becomes one of lease; if, on the other hand, there be no such language, but by the express terms of the contract the general possession of the land is reserved by the owner, the occupant becomes a mere cropper, and the relation of master and servant exists between him and the owner. *Romero* v. *Dalton, supra,* cited.

3. SAME—EXECUTION—LEVY—INTEREST OF CROPPER.—A cropper being a mere servant of the owner, has no such interest in the grain as to

render it liable to execution for his debt so long as it remains *en masse.*

4. CLAIM AND DELIVERY—SUPPLEMENTAL ANSWER—SUBROGATION—JUDGMENT CREDITOR CANNOT BE SUBROGATED TO DEBTOR'S RIGHTS.—In an action of claim and delivery against a judgment creditor of a cropper and sheriff, to recover grain wrongfully levied upon, a supplemental answer and cross-complaint, filed after the cause had been submitted, attempting to set up the cropper's interest in the grain as against plaintiff, and asking that he be made a party, to the end that his rights be determined and the judgment creditor subrogated thereto, is properly stricken out, on motion. The judgment creditor being a stranger to the contract, and the action being primarily one for delivery of possession of property to the one rightfully entitled thereto, he could not withhold possession from plaintiff under a claim that he was entitled to an accounting from plaintiff for what might be due the judgment debtor.

5. SAME—VALUE OF PROPERTY—ASSESSMENT OF.—In actions of claim and delivery, under a statute providing for an alternative judgment for the return of the property or payment of its value, the rule is to assess the value of the property at the time of trial rather than at the time of taking.

6. SAME—SAME—DEDUCTION FOR LABOR.—In actions of claim and delivery, as also in replevin, where the legal identity of the property has not been destroyed, the owner is entitled to recover the whole of it, or its full value, without any deduction for labor bestowed upon it.

7. EXECUTIONS—LEVY — SHERIFFS — EXPENDITURES FOR BETTERMENT—DUTY TO SELL IN FORM AS SEIZED.—Where grain in stack is levied upon, it is the business of the sheriff, under the writ, to sell the property in stack, and he is not justified in threshing or expending labor upon it not necessary for its preservation.

APPEAL from a judgment of the District Court of the Third Judicial District in and for the County of Maricopa. Joseph H. Kibbey, Judge. Affirmed.

The facts are stated in the opinion.

H. B. Lighthizer, for Appellants.

Appellants contend that the instrument in question is a lease and chattel mortgage combined, and wholly incompetent as evidence of any title or ownership in the lessor and mortgagee, Robinson, in the crops raised upon the leased premises, because said instrument was not executed, proved, and recorded as a chattel mortgage.

The form of words in a lease is of no consequence, and it is not at all necessary that the term "lease" should be used. Whatever is equivalent will be equally available, if the words assume, as in this case, the form of a license, covenant, or agreement, and the other requisites of a lease are present. *Moore* v. *Miller,* 8 Pa. St. 272.

The contract contains all the essential elements of a lease,— viz., the letting of the premises for a definite period or term and at a definite and certain rental,—and necessarily creates the relation of landlord and tenant between Robinson and Thomas, unless it be found to contain conditions which destroy such relationship. 6 Lawson's Rights, Remedies, and Practice, secs. 2801-2803; 12 Am. & Eng. Ency. of Law, pp. 976, 977.

The trial court treated this instrument as a contract of hire, or what is known as a "cropping contract," whereby Robinson hired Thomas as his servant to cultivate the land, and agreed to pay him for his services a share of the crop raised, and, as a sequence, that the ownership and possession of the crop was in Robinson, while Thomas's possession was that of a servant.

Whether the possession is that of the servant or tenant is held to be a question of fact, and a contract between a landowner and a laborer, by which the latter is to raise a crop on the land of the former, creates the relation of landlord and tenant, unless the contrary clearly appears. *Birmingham* v. *Rogers,* 46 Ark. 254; 12 Am. & Eng. Ency. of Law, p. 664.

The facts in this case show that the elements of the relation of master and servant are entirely wanting in the contract. Such relationship involves a hiring, and hiring contemplates wages, and wages are necessarily certain and determinate, and proceed from the master to the servant, instead of, as in this case from the servant to the master.

Such relationship imports an unqualified control and authority upon the part of the master over the servant.

In this contract it is expressly stated that Robinson should not have any right to be dissatisfied with the work of the so-called servant, Thomas, or "interfere with" him, so long as he should prosecute his work with ordinary diligence and perform the same in a workmanlike manner, which work, it will be observed, includes his payment of rent to the master.

The terms are directly the reverse of those held by the courts to be "cropping contracts," in that the "cropper" takes no term in the land itself, has no control over the crops, and gains no property in his share thereof until the division, which is made by the landlord. See title "Cropper," 4 Am. & Eng. Ency. of Law, 887; 6 Lawson's Rights, Remedies, and Practice, p. 4572, n. 3.

Neither does this case come within the purview of the long line of decisions holding that such a contract is not a lease, and that, as to the crop raised, the owner of the land and the occupier are merely tenants in common.

Under this contract there is no division, properly speaking, of the specific crops provided for, since the setting aside of the fixed quantity of pounds of grain per acre for the landlord is in no sense a division of the crops into parts or shares; and this feature of the contract in itself settles the *status* of Thomas to be that of a tenant with exclusive ownership of the whole crop, until the fixed quantity due the landlord is set apart for him. *Dockman* v. *Parker*, 9 Greenl. 137, 23 Am. Dec. 547; *Chicago etc. Ry. Co.* v. *Linard*, 94 Ind. 319, 48 Am. Rep. 155; *Sargent* v. *Courier*, 66 Ill. 245; *Schmitt* v. *Cassilius*, 31 Minn. 7, 16 N. W. 453; *Strain* v. *Gardiner*, 61 Wis. 174, 21 N. W. 35.

The court erred in striking out the supplemental answer of the defendants. It is the duty of the trial court to grant amendments whenever at any stage of the trial they are necessary to the purposes of substantial justice, and this power should be liberally exercised to obtain a fair trial on the merits. Rev. Stats. Ariz., pars. 667, 689; *Stringer* v. *Davis*, 30 Cal. 318.

The fundamental law of damages is compensation for actual loss, and the court erred in excluding evidence tending to show the extent and nature of appellee's interest in the property he was seeking to recover.

The rule for the measure of damages in actions of claim and delivery or replevin, where the property claimed cannot be returned, and plaintiff takes judgment for its value, is, generally speaking, the same as in an action of trover. *Washington Ice Co.* v. *Webster*, 62 Me., 341, 16 Am. Rep. 463; *Hisler* v. *Carr and Jesse*, 34 Cal. 641.

When, as in this case, the plaintiff is successful, and a part

of the property is not found by the officer and has not been delivered, it has been repeatedly held that the measure of damages is the value of such undelivered part, with interest from the time of taking. Wells on Replevin, secs. 520, 539; *Booth* v. *Ableman,* 20 Wis. 602; *Dana* v. *Fiedler,* 12 N. Y. 40, 62 Am. Dec. 130; *Brizee* v. *Maybee,* 21 Wend. 144; *Buckley* v. *Buckley,* 12 Nev. 423; *Aultman* v. *Stickler,* 21 Neb. 72, 31 N. W. 241.

And in Indiana, where the contest in replevin arose about the validity of a sale of personal property, the value thereof at time of seizure was regarded as the proper measure of damages. *Walls* v. *Johnson,* 16 Ind. 374.

Where property is taken by mistake, or under a *bona fide* belief of right, the defendant in trover is liable only for its value before he bestowed any labor or expense upon it, or he is allowed a deduction (as was claimed in this case) for such labor and expense, if the enhanced value is made the measure of damages, the latter rule being preferred. *Pulcifer* v. *Page,* 32 Me. 404, 54 Am. Dec. 582. *Coleman's Appeal,* 62 Pa. St. 523; *Clowser* v. *Joplin Mining Co.,* 4 Dill. 469, note; *Waters* v. *Stevenson,* 13 Nev. 157, 29 Am. Rep. 293; *Wooden Ware Co.* v. *United States,* 106 U. S. 432, 1 Sup. Ct. Rep. 489.

C. F. Ainsworth, for Appellee.

If one hires a man to work his farm, and gives him a share of the produce, he is a cropper. He has no interest in the land, but receives his share as the price of his labor. The possession is still in the owner of the land, who alone can maintain trespass; nor can he distrain for he does not maintain the relation of landlord and tenant. *Adams* v. *McKesson,* 53 Pa. St. 81, 91 Am. Dec. 183; *Porter* v. *Chandler,* 27 Minn. 301, 38 Am. Rep. 293; *Wentworth* v. *Miller,* 53 Cal. 9; *Parish* v. *Commonwealth,* 81 Va. 1; *Provis* v. *Cheves,* 9 R. I. 53, 98 Am. Dec. 367; *Hammock* v. *Creekmore,* 48 Ark. 264, 3 S. W. 180; *Romero* v. *Dalton,* 2 Ariz. 210, 11 Pac. 863; *Fox, Baum & Co.* v. *McKinney,* 9 Or. 493; *Andrew* v. *Newcomb,* 32 N. Y. 417; *Chase* v. *McDonnell,* 24 Ill. 237; *Mercies* v. *Adem,* 46 Ga. 583; *Sentell* v. *Moore,* 34 Ark. 687; *Pender* v. *Pease,* 32 Ark. 435.

Under the contract in question John M. Thomas and D. C. Clarahan, being mere croppers, and not having completed the contract on their part either before or after the levy of appellant's execution or up to the time of the trial, had no interest in the crop which could be subjected to the payment of their debts or rendered liable to execution against them. *Brazier* v. *Ansley,* 11 Ired. 12, 51 Am. Dec. 408; *Chandler* v. *Thurston,* 10 Pick. 205; *Lewis* v. *Lyman,* 22 Pick. 437; *Provis* v. *Cheves,* 9 R. I. 53, 98 Am. Dec. 367; *Tewhy* v. *Wingfield,* 52 Cal. 319; *Wentworth* v. *Miller,* 53 Cal. 9; *Howell* v. *Foster,* 65 Cal. 169, 3 Pac. 649; *Esdon* v. *Colburn,* 28 Vt. 631, 67 Am. Dec. 730.

The supplemental answer was properly stricken out by the court, for the reason that it stated no facts not known to the defendants at the time of the filing of the original answer. The allegations in the supplemental answer contradictory of the allegations in the original were properly stricken out. *Slauson* v. *Englehart,* 34 Barb. 198; *Buchanan* v. *Comstock,* 57 Barb. 582.

The right to allow amendments to any pleading is a matter of discretion with the trial judge, and no error lies from the decision, unless it clearly appears to be an abuse of discretion.

It is assigned as error that the court below allowed the plaintiff to show the value of the property in question at the time of the trial. The correct rule was applied. Colby on Replevin, sec. 941; *Romaine* v. *Vanallen,* 26 N. Y. 309; *Munsgrave* v. *Beckendorff,* 53 Pa. St. 310; *Hammer* v. *Hathaway,* 33 Cal. 117.

The appellants, being wrong-doers, no deduction should be allowed for labor bestowed upon the property. *Silsbury* v. *McCoon,* 3 N. Y. 379, 53 Am. Dec. 307, and note; *Snyder* v. *Vaux,* 2 Rawle, 433; *Brown* v. *Sax,* 7 Cow. 95; *Baker* v. *Wheeler,* 8 Wend. 505, 24 Am. Dec. 66, and note; *Final* v. *Backus,* 18 Mich. 218; *Nesbit* v. *St. Paul Lumber Co.,* 21 Minn. 491; *Bly* v. *United States,* 4 Dill. C. C. 464, Fed. Cas. No. 1581; *Ellis* v. *Wire,* 33 Ind. 127, 5 Am. Rep. 189; *Benjamin* v. *Benjamin,* 15 Conn. 347, 39 Am. Dec. 384; *Davis* v. *Early,* 13 Ill. 193; *Cavin* v. *Gleason,* 105 N. Y. 256, 11 N. E. 504; *Gates* v. *Rifle Boom Co.,* 70 Mich. 309, 38 N. W. 245; *Busch* v. *Fisher,* 89 Mich. 192, 50 N. W. 788.

SLOAN, J.—On December 4th, William H. Robinson entered into a written contract with John W. Thomas and D. C. Clarahan, the terms of which contract were substantially as follows: Robinson agreed to furnish land, water for the irrigation thereof, and seed for the growing of crops of barley and wheat thereon during the season of 1890. Thomas and Clarahan agreed to construct the necessary irrigating ditches on said land, to sow, irrigate, and otherwise tend and care for said crops of barley and wheat until maturity, and then at the proper season to harvest thresh, clean, and sack all the grain produced by said crops, entirely at their own expense. The contract, in addition, contained the following stipulation: "That the title to said entire crops shall always be and remain in the party of the first part until the same shall have been grown, harvested, and sacked, and 150 pounds of wheat for each and every acre of land sown in wheat, and 200 pounds of barley for each and every acre of land sown in barley, and hauled by the parties of the second part at their own expense, and they hereby agree to haul the same to the city of Phœnix, Arizona, and there deposit the same in some place to be designated by the party of the first part; and that thereupon, and not before, the remaining portion of said grain so grown and harvested on and from said land shall be paid to said second parties for the things they undertook to do in the premises, provided they shall perform the same in good faith; and that during all the period of time herein specified said first party shall be deemed in possession of said lands and crops, and all said work shall be done under his supervision and to his satisfaction; and, in the event of a failure on the part of the second parties to diligently prosecute the said work, the party of the first part may perform the same himself, and carry out the terms of the foregoing agreement in any manner he shall see fit, and all rights of the second parties shall thereupon cease and determine." It was further stipulated that the party of the first part should not have the right "to be dissatisfied with said work, or perform the same himself, or to interfere with the second parties, if the second parties prosecute their work with ordinary diligence, and perform the same in a diligent and workmanlike manner."

It appears that Thomas, under said contract, entered upon the land of Robinson, and performed the labor required in

the growing of said crops, and, when the latter had matured, cut and stacked the same on said land. It further appears that on August 7, 1890, appellant Gray, as sheriff, seized said stacks of wheat and barley under an execution issued out of the district court of Maricopa County under and by virtue of a judgment rendered therein in favor of appellant Tantau and against said Thomas. After the levy of said execution said sheriff, Gray, had the grain threshed, sacked, and hauled and stored in the city of Phœnix, paying for this labor out of said grain at the then market price thereof in Phœnix. On or about August 30th, appellee, Robinson, learning that the grain was in the possession of the sheriff, notified him as well as the judgment creditor, Tantau, of his ownership under his contract with Thomas, and, being refused possession of the same, on the 5th of September, 1890, brought suit in claim and delivery against said sheriff, Gray, and said judgment creditor, Tantau, setting up in his complaint that he was the owner and entitled to the possession of the whole of said grain, and praying for the return thereof, or its value, as well as damages for the taking and detention. Robinson, having given bond for the possession of the grain as required by the statute, and obtained an order for the delivery, took possession of the grain remaining in the hands of the sheriff, after paying for the threshing, sacking, and hauling, as aforesaid. Appellants answered the complaint—First, by general denial; and second, by alleging ownership and possession in Thomas, and justifying the seizure by the sheriff by virtue of the execution issued under said judgment against said Thomas. The case was tried by the court without the aid of a jury. After the cause had been submitted and taken under advisement, appellants filed a supplemental answer and cross-complaint, in which they attempted to set up Thomas's interest in the grain under the contract with Robinson, and asked that he be made a party to the end that his rights be determined and appellant Tantau be subrogated thereto. This supplemental answer was stricken out by the court upon motion, whereupon judgment was entered in favor of Robinson for the possession of the whole of the grain returned to him under the order of delivery, and for the sum of $525.32 damages found to have been sustained to the same, and also judgment for the return of the remainder of the grain, or its value, assessed at the sum

of $682.93, and for costs of suit  A motion for new trial was made and overruled, whereupon this appeal was taken.

The principal contention in this case grows out of the interpretation to be put upon the contract between Robinson and Thomas.  Appellants contend that it is nothing more than a contract of lease, and that by it the relation of landlord and tenant was created between the parties thereto; that all the interest which Robinson had, therefore, in the crops was a mere lien for the share he would have been entitled to had the contract been fully and completely carried out by the parties thereto.  On the other hand, it is contended by the appellee that it is a contract of hire, or what is commonly denominated a "cropper's contract," which may be defined generally as one in which one agrees to work the land of another for a share of the crop, without obtaining any interest in the land or ownership in the crop before division.  Under such a contract the occupier becomes merely the servant of the owner of the land, being paid for his labor in a share of the crop.  The authorities are somewhat conflicting as to what words will constitute a contract one of lease and what will constitute one of hire.  The general rule, as laid down by the weight of authority, is, that the character of a contract to cultivate lands on shares is to be determined by ascertaining the intention of the parties as expressed in the language they have used.  If the language used imports a present demise of any character by which any interest in the land passes to the occupier, or by which he obtains the right of exclusive possession, the contract becomes one of lease, and the relation of landlord and tenant is created.  *Putnam* v. *Wise,* 37 Am. Dec. 314, and cases therein cited.  If, on the other hand, there be no language in the contract importing a conveyance of any interest in the land, but by the express terms of the contract the general possession of the land is reserved by the owner, the occupant becomes a mere cropper, and the relation of master and servant exists between him and the owner.  *Haywood* v. *Rogers,* 73 N. C. 320; *Adams* v. *McKesson,* 53 Pa. St. 81, 91 Am. Dec. 183; *Esdon* v. *Colburn,* 28 Vt. 631, 67 Am. Dec. 730; *Wentworth* v. *Miller,* 53 Cal. 9; *Romero* v. *Dalton,* 2 Ariz. 210, 11 Pac. 863.  The contract in question provides in express terms that the title to the crops to be grown was to be vested in Robinson, and that he was to be deemed to be

in the exclusive possession of the whole thereof until a division should be made, as therein provided. No words of demise are contained in any clause, and all words which might by any possibility be so construed are evidently purposely omitted. In the case of *Romero* v. *Dalton*, cited above, this court declared an agreement similar in terms to the one in question to be a cropper's contract, and that the relation of landlord and tenant was not created thereby. We are clearly of the opinion that the contract between Robinson and Thomas must be so regarded. If the title and possession of the whole of the grain were in Robinson until division, Thomas had no such interest in the grain as rendered it liable to execution for his debt so long as it remained *en masse*. *Chandler* v. *Thurston*, 10 Pick. 205; *Warner* v. *Hoisington*, 42 Vt. 94; *Brazier* v. *Ansley*, 11 Ired. 12, 51 Am. Dec. 408. The whole of the grain being the property of Robinson at the time of its seizure by the sheriff, he was entitled to recover its possession in the present action. He would have been so entitled, as against Thomas, had the latter undertaken to dispose of the same in any other way than as provided in the contract. Thomas being the mere servant of Robinson, and having no leviable interest in the grain, appellants were therefore strangers to the contract, and had no right to be substituted in the place of Thomas in carrying out the provisions of the contract. Nor had they the right, as claimed by them, to compel in this action a determination of any claim Thomas may have against Robinson growing out of said contract. The action of claim and delivery is primarily one for delivery of possession of property to the one rightfully entitled thereto, and, as we have decided this right to be in Robinson at the time of suit, appellants could not withhold the possession of the grain from him under a claim that they were entitled to an accounting from Robinson for what might be due Thomas. If they, as the creditors of Thomas, have a right to compel such an accounting, it is not to be enforced in this action. The views we have expressed dispose of the question as to the correctness of the court's ruling in striking out the supplemental answer and cross-complaint.

Appellants complain that the trial court assessed the value of the property at the time of the trial, and not at the time of taking. We find no error in the ruling of the court in this

respect. Whatever may be the rule in the ordinary action of replevin, under statutes similar to our own, which provide for an alternative judgment for the return of the property or payment of its value, the rule generally applied is to assess the value of the property at the time of trial. *Brewster* v. *Silliman*, 38 N. Y. 423; *Pope* v. *Jenkins*, 30 Mo. 528; *Lambert* v. *McFarland*, 2 Nev. 58; *Carson* v. *Applegarth*, 6 Nev. 187.

The court below refused to hear proof of the cost of threshing and hauling the grain, expended by the sheriff, and made no deduction thereof in the judgment. This is assigned as error by the appellants, who contend that they should have been allowed this cost, for the reason that it was spent in bettering the property, in ignorance of the claim of appellee. While there are authorities which hold that when the taking was in good faith the plaintiff in replevin can only recover the value of the property less the increased value put upon it by the labor and skill of the innocent taker, the weight of authority seems to be that in actions of claim and delivery, as also in replevin, where the legal identity of the property has not been destroyed, the owner is entitled to recover the whole of it or its full value without any deduction for labor bestowed upon it. In trover, undoubtedly, a different rule prevails. The present case is scarcely one for the application of the rule contended for, in any event. It was the business of the sheriff, under the writ, to have levied upon and sold the property in the stack, and he was scarcely justified in expending labor or cost upon it which was not necessary for its preservation. We think the judgment should be affirmed, and it is so ordered.