No...——

First Circuit Appeal

LOUISIANA FARM BUREAU COTTON GROWERS' CO-OPERATIVE ASSOCIATION v. W. E. BANISTER

(June 12, 1925, Opinion and Decree.)

(*Syllabus by the Editor.*)

1. Louisiana Digest—Sales—Par. 1, 14, 15; Injunction—Par. 23; Sequestration—Par. 7.

An agreement' between a co-operative association organized under Act No. 57 of 1922, and a grower by which the grower agrees to sell and deliver to the association all the cotton produced or acquired by or for him in Louisiana during five years is a valid agreement which can be enforced by the co-operative association by writs of injunction and sequestration.

2. Louisiana Digest—Damages—Par. 20, 24.

Under the provisions of Act No. 57 of 1922, a co-operative association can recover 5c per pound from the grower for a breach or a threatened breach of the contract by a member of the association.

3. Louisiana Digest—Costs and Fees—Par. 30.

Under the provisions of Act No. 57 of 1922, a co-operative association can recover reasonable attorney fees for an infraction of the marketing agreement by the grower who is a member of the association.

4. Louisiana Digest—Agriculture—Par. 1, 2, 3.

Where a farmer laborer raises a crop on shares, the amount of the crop which is produced for the owner or lessor of the farm under whom he works is the amount of cotton delivered to the owner or lessor after the deduction of the farm laborer's share.

Appeal from the Twenty-sixth Judicial District, Parish of Washington, Hon. Prentiss B. Carter, Judge.

This is a suit by which a co-operative association enforces its contract when a grower fails and refuses to deliver cotton by a suit coupled with writs of injunction and sequestration.

There is also a claim for damages.

There was judgment for defendant and plaintiff appealed.

Judgment reversed.

Taylor and Porter, and James A. Loret, of Baton Rouge, attorneys for plaintiff, appellant.

Ott & Johnson, of Bogalusa, attorneys for defendant, appellee.

MOUTON, J. Plaintiff association was organized under the enabling provisions of Act 57, 1922, which was enacted for the purpose of fostering the intelligent marketing of agricultural products, also to eliminate as far as possible, speculative manipulation of such products, and to stabilize their prices. A marketing contract was adopted by plaintiff association as is authorized by the aforesaid act. The defendant signed this contract and became a member of the association. The contract provides, as follows: "Nothing in this agreement shall be interpreted as compelling the grower to deliver any specified quantity of cotton per year; but he shall deliver all the cotton produced or acquired by or for him as landlord or lessor." Article 2 of this marketing agreement reads as follows: "The association agrees to buy and the grower agrees to sell and deliver to the association all of the cotton produced or acquired by or for him in Louisiana during the years, 1923, 1924, 1925, 1926 and 1927." It is also stipulated in the agreement that it shall be binding on the grower as long as he produces cotton directly or indirectly, or has the legal right to exercise control of any commercial cotton or any interest therein during the term of the contract. Plaintiff averred that defendant had produced or acquired six bales of cotton or more than 3000 pounds of lint cotton of the 1924 year crop, and that

demand of delivery thereof had been made upon him by the association; that he had failed and refused to deliver the cotton, had either sold or would dispose of four bales of the six, and had two in his possession or under his control. Plaintiff obtained a preliminary writ of injunction to prohibit the sale of these two bales, and also a writ of sequestration under which they were seized. Plaintiff also claims damages for $100.00 for the four bales sold or that would be disposed of as above stated, and for attorney's fees in the sum of $500.00.

The demand was rejected. Plaintiff association appeals.

Defendant, who is a farmer of Washington Parish, had three tenants on his farm in 1924; Cleve Sladen, Robert and Ulra Gill. They were all working on shares. Robert and Ulra Gill were to have for their share, one-half the cotton produced by them; and Sladen, for his share, three-fourths. Harness, mules and equipment were furnished Robert Gill and Sladen by defendant. Ulra furnished his own equipment. Sladen made six bales of cotton, Robert Gill five, and Ulra one. Defendant says he guaranteed Sladen's account for supplies and that the Gills furnished their own supplies. Defendant, the record shows, gave to each of these tenants a certain acreage on his farm to make their crop. These tenants were certainly not partners of the defendant nor his lessees. They were croppers on shares or laborers to whom was given to the Gills one-half, and to Sladen one-fourth of the gross product of the cotton in lieu of wages. Bres and Obrien vs. Cowan, 22 La. Ann. 438; Lalanne Bros. vs. McKinney, 28 La. Ann. 642. This cotton was the property of defendant, owner of the land, as was held in the cases above cited. The tenant had a right to their proportionate share therein for wages, but were not co-owners with defendant as claimed by them.

In the articles of agreement with the plaintiff, defendant had obligated himself to deliver to the association all the cotton produced, acquired by or for him, as landlord or lessor in 1924, and the subsequent years therein specified. He should therefore have delivered to plaintiff under the terms of the agreement, the cotton produced on his farm by these tenants in that year. Counsel for defendant contends that these tenants are lessees, and grounding himself on this contention, he claims that they became joint owners with defendant of every fibre of the cotton produced. He contends that as co-owners, these tenants were proprietors in common of every particle of this cotton and that defendant could not deliver it to the association, C. C. Article 2671 says: That in the contract of lease the price should be determinate, but that it may, however, consist "in a portion of the fruits yielded by the thing leased".

Twelve bales of cotton were "yielded" by the land leased, if the contract be classed as a lease and consequently, were "fruits".

Sladen, the proof shows made 6 bales of cotton. If the agreement was a lease, his "portion" of this crop was three-fourths, and that of the defendant was one-fourth. We could have demanded from Sladen his one-fourth of the crop in the seed, could have had his share or portion ginned and baled for delivery to plaintiff if he had desired to comply with the obligations of his contract. This cotton was raised on a few acres of defendant's farm and it is idle to say that it might have been of a different grade or value, thus preventing an equal partition thereof. Even if it could have been of a different quality, a division in kind was perfectly feasible, and would not have been inequitable. The proof shows that Sladen made six bales in all, and that he sold four. Under his contract

with Sladen, defendant was entitled to one-fourth of his cotton. He certainly could have retained one of the four bales which were sold by Sladen, and he should have delivered it to the association. The same reasoning applies to the other tenants, Robert and Ulra Gill, who were working on halves. Defendant should have held all the cotton produced as owner, or should have exacted a delivery of his share in seed and have had it baled, or he should have taken his portion after it was baled, as before explained, so that he might have delivered to plaintiff "all the cotton produced or acquired by or for him as landlord or lessor," in accordance with the stipulations of his marketing agreement.

Plaintiff asks for the sum of $100.00 based on a claim of 5 cents per pound against defendant for all the cotton sold, withheld or marketed, other than in accordance with the terms of the marketing contract. The articles of the agreement and Act 57 of 1922, authorize such a recovery, for a breach or a threatened breach of the contract by a member of the association. The proof shows that the cotton produced by the tenants weighed 450 pounds a bale, and plaintiff is therefore entitled to $100.00 for the violation of the contract by defendant. The association also claims $500.00 as attorney's fees for the enforcement of its rights in these proceedings. Such fees are also recoverable for an infraction of the marketing agreement under the provisions of said statute, and the articles of the agreement. The proof shows that $500.00 is a reasonable fee in the instant case, but, we think, that $300.00 is a fair compensation for the attorneys. The marketing contract in the case at bar was entered into for a period of five years, which is well within the time limit fixed in the statute for such agreements. Under the terms of the statute, in the event of a breach or threatened breach

of the contract by one of its members, an association of this character is entitled to an injunction to prevent the breach, or further breach thereof.

The contract was breached in the instant case, and plaintiff is therefore entitled to have the injunction perpetuated, and also to the maintenance of the sequestration on the two bales of cotton seized.

It is therefore ordered, adjudged and decreed that the judgment appealed from be avoided and reversed; that plaintiff association have judgment against defendant in the sum of One Hundred ($100.00) Dollars for the cotton sold, withheld or disposed of in violation of the contract; also for the sum of Three Hundred ($300.00) Dollars for attorney's fees, making a total of Four Hundred ($400.00) Dollars; that the sequestration be maintained on the two bales of cotton seized; that the writ of injunction be maintained and perpetuated; the defendant to pay all the cost of this suit.