No. 2241

Second Circuit

HOLMES v. PAYNE, SHERIFF, ETC.

April 10, 1926, Opinion and Decree)

*(Syllabus by the Editor)*

1. **Louisiana Digest—Agriculture—Par. 13, 14, 17.**

A "Cropper's Contract" is one in which one agrees to work land of another for a share of the crop, without obtaining any interest in the land or ownership in the crop before division.

2. **Louisiana Digest—Agriculture—Par. 14, 20.**

A cropper's contract gives the cropper no legal possession of the premises or crops further than as an employee.

3. **Louisiana Digest—Agriculture—Par. 2.**

Until a cropper's part of the crop is specifically set aside to him, the title thereto is in the landlord, but after adjustment of the cropper's share it belongs to him.

Appeal from the Eleventh Judicial District Court of, Louisiana, Parish of Natchitoches, Hon. J. W. Jones, Jr., Judge.

Action by Minor C. Holmes against J. W. Payne, Sheriff, etc. There was judgment enjoining the sale of the crop seized. Defendants appealed.

Judgment affirmed.

Rusca & Cunningham; J. C. Gunter, of Natchitoches, attorneys for plaintiff.

Breazeale & Breazeale, of Natchitoches, attorneys for defendants.

ODOM, J.   This is a suit brought by a landlord to enjoin the sale by the sheriff under a writ of fi. fa. of a certain lot of cotton and corn grown by a "share-cropper" on plaintiff's plantation in the year 1923.

There was judgment for the plaintiff, the landlord, decreeing him to be the owner of the crops seized and restraining the sheriff from proceding with the sale; from which judgment the defendants appealed.

## OPINION

Wiley Hall lived on and cultivated a part of plaintiff's plantation in the year 1923 under an agreement with the owner of the land that said land owner should furnish the land, a house for him to live in, the necessary teams, farming implements, etc., and should advance to him the necessary money and supplies with which to make and gather a crop.

Hall, the laborer, was to receive one-half of all crops produced by him, and, out of the proceeds thereof, was to reimburse the landlord for his advances.

Previous to the year 1923, Hall, the laborer, had become indebted to S. & H. Kaffie who had reduced their claim to judgment.

In September, 1923, S. & H. Kaffie procured the issuance of a writ of fi. fa. under said judgment and under said writ the sheriff seized and took into his possession:

"An undivided one-half interest in all the crop raised by the defendant Wiley Hall, consisting of 10 acres of cotton in field which will make three bales more or less; three acres of corn which will make 50 bushels more or less; one bale of cot-

ton at gin marked W. H. & M. H., weight 446 pounds."

The sheriff caused the property to be advertised for sale, the sale to take place on October 13, 1923.

The owner of the plantation, Holmes, enjoined the sale of the property on the ground that he was the owner thereof.

It is alleged in his petition and admitted in defendants' answer:

"That said Wiley Hall was and is a cropper or laborer employed by your petitioner, working for your petitioner for one-half of the crop.  That said crops were seized while hanging by the roots and during process of harvesting, with the exception of the bale of cotton, which had been ginned and pressed."

The question to be determined by us is, whether under the circumstances disclosed by the pleadings and the evidence Holmes, the owner of the land, was the owner of the crop produced by Hall?

If he was, the creditors of Hall had no right to seize and sell any part thereof, and the writ of injunction should be maintained.

Hall, the laborer, was not called as a witness and therefore all that we know of the contract between him and Holmes the landlord, is what we got from the pleadings and the testimony of Holmes himself.

Holmes testified, in substance, that Hall was to "crop" for him in 1923 on his plantation and that he—

"* * * called him a man working for me as a laborer".

Asked what he was to pay him, Holmes said:

"His share of the crop"

which, he testified, was one-half thereof.

He said he was to furnish the land, a house for Hall to live in, the teams and farming utensils, and furnish him with money and necessary plantation supplies to make a crop; that he furnished him money and supplies amounting to $362.00, this being more than the value of one-half of the crop produced; that at the time of the seizure he had had no settlement with Hall, and that he had not set aside any portion of the crop to him.

On cross-examination Holmes was asked:

"You furnished him with the land to work * * * and a house to live in and the team and implements to work?"

And he answered:

"Yes.
"Q. He was to furnish his labor?
"A. Yes, sir.
"Q. And he was to get half of what was made?
"A. Yes, sir.

\* \* \*

"Q. And you thought that was your cotton that he made, and could use it to suit yourself?
"A. I was satisfied it was mine."

On further cross-examination he was asked:

"Q. Could you sell the crop if you were the owner, to me for $10.00 or $100.00, the part of it that belonged to the man while it was growing?
"A. I could sell it with his consent, he could do what he pleased with his.
"Q. You could not sell it without his consent?
"A. No.
"Q. You could sell that much if you were the owner without anybody's consent except your own?
"A. Yes, sir."

The above is all the testimony there is in the record as to the contract between these parties.

Under this testimony, we think Hall was only a laborer on Holmes' plantation and was to receive, in lieu of wages, one-half of the crop which he produced. He was what is commonly called a "cropper". There was no express agreement between he and the landlord that he should receive one-half of the crop in lieu of wages; the contract was not stipulated in those words, but that is what the contract amounted to. That is the way such contracts are construed and generally understood in this section. Under such a contract the laborer has no interest in the crop produced by him until and unless the crop is harvested, a division thereof made between he and the landlord and his part segregated and set apart to him.

In the case of Bres & O'Brien vs. Cowan, Faulk, intervenor, 22 La. Ann. 438, the plantation was owned by the Cowans, the defendants, and the court said:

"The defendants employed certain laborers and agreed to give them, in lieu of wages, one-third the gross product of cotton. There was plainly no partnership in this. The plantation was the Cowans; the cotton as it grew was theirs; the supplies were furnished to them for the crop; and every fibre of the cotton, as it matured, was affected by the privilege of the plaintiffs."

In the case of Lalanne Brothers vs. McKinney, 28 La. Ann. 642, the laborers were to be paid one-half the proceeds of the cotton and half of the other products, and they were referred to in that case as "hirelings".

The case of Jeter vs. Penn, 28 La. Ann. 230, involved the question as to whether the owner of a plantation had a right to discharge the manager. The manager was to receive one-thirteenth of the products of the plantation and claimed that he was a partner with the land owner and could not be discharged; and the court said:

"He was merely to receive a certain portion of whatever crops might be made on the plantation, irrespective of any profits which the crops might result in. He was, therefore, a mere employee, to be paid in a portion of the crops instead of a certain sum of money. Being an employee he could be discharged for cause."

In the case at bar, Hall, the laborer, was to receive a portion of the crop as compensation for his labor. He was therefore an employee; as much so as if he had been working for a stipulated sum of money each month as wages. He was what is termed in this section and elsewhere as a "cropper". A "cropper" is one who raises a crop upon land of another under a contract to raise a crop for a particular part of it. A cropper's contract is "one in which one agrees to work the land of another for a share of the crop, without obtaining any interest in the land or ownership in the crop before division".

Gray vs. Robinson, 33 Pac. 712.

As stated by another court, a "cropper" is one hired to work land and to be compensated by a share of the produce.

As to the rights and liabilities of the "cropper", the law is thus stated in 12 Cyc. 980:

"A cropper's contract gives the cropper no legal possession of the premises further than as an employee; the legal possession is in the employer, who alone can maintain trespass. Before the division of the crop the whole is the property of the landlord and the cropper has no legal title to any part thereof, which can be subjected to the payment of his debts or which he can assign or convey to a third person. When, however, their respective rights in the crop have been adjusted and the cropper's part specifically set aside to him the title thereto is in him, and he may mortgage or dispose of the same as he will."

To the same effect, see 17 Corpus Juris, 382, sec. 11.

These texts are supported by citations from the courts of last resort of eighteen states of the Union.

See also, La. Farm Bureau C. G. Co-op. Assn. vs. Banister, 2 La. App. 620.

In 8 R. C. L. 376, sec. 23, with reference to title to and right to a division of the crops raised on shares, it is said:

"The possession of a cropper is that of a servant and therefore it is in law that of the landlord, and hence the exclusive property in the crops remains in the landowner until he has set apart the employee's share. This right to divide the crop belongs exclusively to the landowner. Thus a cropper has no such interest in a crop as can be subjected to the payment of his debts while it remains en masse, or as will enable him to sell any part of the crop prior to its division."

In the case of State vs. Jacobs, 50 La. Ann. 447, 23 South. 608, the defendants were indicted for the larceny of cotton, and the court said:

"The question raised by the other bills is as to the ownership of the property, the subject of the larceny. The testimony offered was that the cotton was raised under the agreement that the accused, a laborer on the plantation, was to share the crops with the owner. The indictment laid the property in the owner. It is contended on behalf of the accused that he could not be convicted of the larceny of cotton, he claims was owned in part by himself, and the proof adduced on the trial did not support the indictment. We have considered the line of argument and the authorities cited in support of it. The cotton raised on the plantation on shares must, we think, be deemed to belong to the owner of the plantation, while still in his possession, and before the share of the laborer has been separated. This is the view, too, of the text writers."

Counsel for the seizing creditors point to the fact that Holmes, the landlord, testified that he could not or would not sell the

crop without the consent of Hall, and argue that it follows that Holmes recognized Hall as the owner of a one-half interest in the crop. We do not construe his testimony to mean that. Of course the laborer has an interest in the crop he produces. He is to receive a part of the crop as his wages, and to deprive him of the crop would be to deprive him of his wages. The amount of the wages he receives depends upon the amount of crops he produces and the value thereof. To the end that he may receive just compensation for his services, the laborer has an interest to see that the crop is marketed as contemplated in the agreement. Recognition by the landlord of this fact is not a confession on his part that the laborer owns an interest therein in the sense that it may be seized by the laborer's creditors.

We think that, as a matter of law, the plaintiff in injunction was the owner of the crop seized in this case, and that the injunction was properly sued out and maintained.

For the reasons assigned, it is therefore ordered, adjudged and decreed that the judgment appealed from be affirmed with costs.