[Civil No. 3335. Filed January 22, 1934.]

[28 Pac. (2d) 1016.]

S. A. GERRARD COMPANY, a Corporation, Appellant, v. R. B. CANNON, Appellee.

Mr. Herman Lewkowitz and Mr. J. B. Zaversack, for Appellant.

Mr. L. J. Cox, for Appellee.

ROSS, C. J.—This is an action by R. B. Cannon to collect from the S. A. Gerrard Company for some hauling of cantaloupes and lettuce during the crop seasons of 1929, 1930, and 1931, alleged to have been done for the company at the instance and request of its employees.

Defendant denied the hauling was done for it or that it was indebted to plaintiff on account thereof. Defendant also alleged that the hauling services were rendered to Joe Takano, J. Kaneko, L. Asano, K. Nakatsu, Y. Matsumoto, N. Tanita and H. Kuhara, who were Japanese growers for defendant under contract, the material part of which is as follows:

"Now, therefore, it is agreed by and between the parties hereto:

"1.  That said party of the first part (The S. A. Gerrard Co.) does by these presents hire, employ and engage the services of said party of the second part to superintend, manage, care for, plant, cultivate and harvest crops upon said lands and also hire from the party of the second part all necessary horses, farm machinery, tools and implements for a period of 6 months . . .

"2. . . . that all the work in the planting and cultivating, harvesting, packing and delivery of said crops shall be done and performed by the said second party, or, if it shall become necessary for said second party to have additional labor, he shall at his own expense employ the same, and there shall be no obligation on the part of the first party to pay for any labor employed.

"3. The said party of the second part in consideration of said employment, does hereby promise and agree to work, labor and render services to the said party of the first part for said period of employment

and does hereby promise and agree to duly and properly manage, care for, plant and cultivate said crops during said period of employment in a good and farmerlike manner, as directed and required by the said party of the first part, and to harvest and prepare all such crops for market, including the packing and delivery of the same in containers furnished by party of the first part at the nearest convenient point for distribution to market, as shall be designated by party of the first part, and do any and all other things in connection therewith, as directed and required by said party of the first part, and to furnish and hire to the party of the first part all necessary horses, farm machinery, tools and implements.

"4. . . . It is expressly understood and agreed between the parties hereto that this agreement is one of employment only, and that said second party shall have no interest of any kind or nature, in or to, and shall have no control over, the crops grown on said lands or any part thereof, and the said party of the second part is to be compensated for services only as in this agreement provided."

It is averred that plaintiff knew of the written contract and its terms.

The trial resulted in a verdict and judgment for the plaintiff for the full amount asked.

The reasons for defendant's appeal, as indicated by its assignments, are: (1) The court's refusal to grant its motion for a directed verdict at the close of plaintiff's case; (2) a like refusal at the close of the whole case; and (3) an erroneous instruction to the jury.

There is not much conflict in the evidence. Therefrom it appears that during 1929, 1930, and 1931, and for several years prior thereto, defendant was engaged in growing and marketing, on a large scale, cantaloupes, lettuce and other vegetable products on its own lands or lands rented by it, situate in the Salt River Valley, and with its Japanese growers used the above form of contract. The named grow-

ers had separate contracts with defendant, and they separately grew crops and hired the plaintiff to do the hauling of their cantaloupes and lettuce, at so much per crate, from packing sheds to shipping points. Plaintiff rendered all his bills for hauling to the grower that hired him. The credits on such bills were payments made by the grower. At no time while he was doing the hauling did he render a bill to defendant, or formally demand payment of defendant, although these growers were behind in their payments for hauling from the first season of 1929 to and including the spring season of 1931, or practically until he ceased to haul for them.

Bearing on plaintiff's knowledge of the grower's contract we give his answers to the following questions:

"Q. You know what a grower's contract is, don't you? A. Probably.

"Q. You have seen lots of them? A. I didn't care to read them . . . Not before I had the trouble."

Again he testified: "I thought the Japs were being paid the money to pay me and were using it for other purposes and I was being as lenient as possible."

Plaintiff, however, testified that he thought he was hauling for defendant; that one time he gave defendant's bookkeeper the names of the Japanese and the amount each owed him for hauling.

The manner of carrying out the written contract by the grower and the defendant was essentially in conformity with its terms. The grower furnished work animals, farm machinery, tools and implements, and all the labor necessary for the planting, cultivating, harvesting, and packing, and personally employed plaintiff to deliver the crops to the shipping station; and the defendant furnished the land, irrigation water, seed, crates, a stated amount per acre ($15) for expenses, shipped and marketed the product, and, after deducting all expenses, including rent

for land, costs of water, seed and commissions, from the gross amount received, paid the grower 80 per cent. of the net profits, if any. The farming by the grower was done under the general directions, supervision, and control of defendant's manager or field men.

The plaintiff insists that the Japanese who hired him to do the hauling were employees of defendant and were acting within the line and scope of their employment when they hired him to do the hauling, and that defendant is liable therefor. The defendant insists that the written contract between the grower and the defendant, as also the manner of carrying it out, made the grower an independent contractor for whose engagements the defendant is in no way responsible. Under the contract the grower had no interest in the land and none in the crop. He was to be compensated out of the profits realized from the crop. His status is that known in law as a "cropper"; that is, "one who having no interest in the land works it in consideration of receiving a portion of the crop for his labor." 17 C. J. 382, § 9. In *Gray* v. *Robinson*, 4 Ariz. 24, 33 Pac. 712, we said:

"Under such a contract the occupier becomes merely the servant of the owner of the land, being paid for his labor in a share of the crop." See, also, *Romero* v. *Dalton*, 2 Ariz. 210, 11 Pac. 863.

The Japanese growers were not independent contractors but servants or employees of defendant and, within the line or scope of their duties, its agents. The growers agreed with defendant to deliver the products "at the nearest convenient point for distribution to market." This agreement, as between the grower and defendant, was binding. The grower could himself do the hauling or he could hire someone else to do it. In the event he hired someone to do the hauling as between him and defendant he must pay for such hauling. And we think if the person

who did the hauling was familiar with the terms of the contract and accepted the employment from the grower with the knowledge that the latter had agreed to pay for it, he too is bound thereby. By the express terms of the contract the agency of the Japanese grower was limited to the planting, cultivating, harvesting, packing and delivering the cantaloupes and lettuce. He had no authority to incur debts against the defendant for this work or any part of it. His authority in that regard was limited, or rather taken away from him. One dealing with him knowing this restriction or limitation is bound thereby.

The general rule, as stated in the Restatement of the Law of Agency (by the American Law Institute), page 406, section 166, is:

"If a third person has notice of a limitation of an agent's authority, he cannot subject the principal to liability upon a transaction with the agent in violation of such limitation."

But the cantaloupes and lettuce were the personal property of the defendant, a corporation, unable to act except by and through its agents. The growers were the agents, entrusted with the duty of delivering the produce at the shipping station. A person hired by them to do the hauling, in the absence of knowledge of the contract between the grower and defendant, might well assume the growers were acting within the scope and line of their authority and look to the defendant for compensation. If plaintiff, however, knew from an inspection of the contract between defendant and the Japanese, or from any other source, that the Japanese were to pay for the hauling and dealt with them on that basis, or if he did the hauling on the credit of the Japanese growers, he is not entitled to recover of defendant. But if he did not know of the terms of said contract, or did not

extend the credit to the Japanese, then he should be permitted to recover.

It follows from what we have said that the court did not err in refusing to direct a verdict. The defendant waived the motion for such a verdict at the close of plaintiff's case by presenting evidence in support of his defense. This is the well-established rule in this jurisdiction. *Southwest Cotton Co.* v. *Pope,* 25 Ariz. 364, 218 Pac. 152.

The motion for a directed verdict at the close of the whole case was properly denied for the reason that there was evidence tending to support plaintiff's case.

But the judgment will have to be reversed because the case was submitted on the wrong theory and conception of the law, as we view it.

The court, on the theory that the contract between defendant and the Japanese was ambiguous, left it with the jury to say whether the growers were independent contractors or employees of defendant, and told the jury if it was not an independent contract, "the Japanese would be the agents of the Gerrard Company and would have the authority to bind the Gerrard Company to pay for the hauling of this lettuce and these cantaloupes, and therefore Mr. Cannon would have a right to look to the Gerrard Company for his pay."

This instruction completely ignores the evidence upon the vital question. The evidence tends to show plaintiff knew of the arrangement between the defendant and the Japanese under which the latter assumed all liability for the delivery of the produce and that he extended credit to them alone. If that be so, the verdict should have been for defendant. The state of the evidence on that point, we think, was of such a nature as that the question under proper instruction should have been submitted to the jury. The instruction given is entirely too broad,

even if based upon the facts, in not limiting the power of the agent to contract to the line and scope of his authority.

For the reasons given the judgment is reversed and the cause remanded for a new trial.

LOCKWOOD and McALISTER, JJ., concur.