## HINKSON v. MORRISON.

1. **Evidence**: EXAMINATION OF WITNESS. A witness cannot be called by a party for the purpose of disproving a fact which the party himself has admitted as a witness.

2. **Principal and Agent**: UNAUTHORIZED SALE. The care and use of the property of the parent by the son, accompanied by declarations of the latter that the property is his own, or that he is authorized as agent to dispose of it, will not prejudice the parent's right or title to the property after sale by the son, without proof of her acquiescence in the latter's claim of ownership or agency.

3. ———: ———: FRAUD. In an action by the parent to recover her property sold without authority by the son. the plaintiff's right to recover the property would not be affected by the fact that the sale was consummated through fraud.

4. **Replevin**: MEASURE OF DAMAGES. In replevin, when the defendant has given a delivery bond for property which perishes in his hands, plaintiff's measure of damages for unlawful detention is the same as if the property had been preserved to abide the result of the action.

*Appeal from Dallas District Court.*

SATURDAY, OCTOBER 20.

ACTION of replevin for two horses, of the alleged value of $250. The plaintiff claimed to be the absolute owner and entitled to the immediate possession, and that said property was unlawfully detained by defendant, to the damage of plaintiff in the sum of $100. Defendant claimed to be the owner of the property and denied plaintiff's ownership; that he (defendant) purchased said property of one John Coffeen for a valuable consideration; that said Coffeen purchased of Charles F. Hinkson, the son of plaintiff, and that he had full authority to sell and dispose of the same. There was a trial by jury; verdict and judgment for plaintiff. Defendant appeals.

*Bryan, Maxwell & Seevers*, for appellant.

*Callvert, Macy & Smith* and *H. M. Baugh*, for appellee.

ROTHROCK, J.—I. There was evidence introduced upon the trial tending to prove that the plaintiff was the owner of the

property in dispute, and that John Coffeen by false representa-
tions induced the son of plaintiff to sell the team to him; that
in payment for the property Coffeen gave his promissory note,
and forged the name of one Thompson thereto as surety.    On
the night of the same day of his purchase Coffeen sold the team
to appellant, who is his brother-in-law, for $20 less than he
agreed to pay plaintiff's son.    On the next day plaintiff's son
demanded the team of appellant, and some conversation took
place between the parties.    Coffeen was present.    Defendant
testified that Charles Hinkson, plaintiff's son, admitted that he
was doing business for his mother and sold the team, but that
she did not want the team sold; that Coffeen had lied to him,
and gave him a note that was worthless.

Samuel Hinkson, another son of plaintiff, testified that he
was present when the demand was made for the team, and that
his brother Charles did not say that he had sold the team to
Coffeen, or that he sold it to him as the agent of his mother;
that while they were talking he was five or six feet away, nearly
opposite a large gate.

The defendant then recalled Coffeen and asked him if he saw
Samuel Hinkson present, or near where the parties stood at the
1. EVIDENCE:   time.  The plaintiff objected to the question because
examination
of witness.   the same subject had been inquired of the witness
and answered.    The objection was sustained.    Whether this
specific inquiry had been made of this witness does not appear
from either of the abstracts, but it does appear that the defend-
ant himself testified that "Charles and Samuel Hinkson came
down and demanded the team."    The only object of the inter-
rogatory to Coffeen must have been to show that Samuel
Hinkson was not present at the conversation referred to.    It
surely ought not to be claimed that the appellant should be
allowed to take up the time of the court in disproving a fact
that he admitted under oath as a witness.    For the same reason
the court properly excluded the evidence as to the location of
the gates near where the parties were standing.

II.    It appears from the evidence that the plaintiff is an
aged and infirm woman, and that her son, Charles Hinkson,
worked the team and had the entire control of the same and

made contracts for its ordinary use, but it does not appear that plaintiff ever, at any time, authorized her son to sell or dispose of the team. No such presumption should arise from the fact that the care and use of the team were entrusted to her son, even though he used it for his own purposes, and any declarations he may have made as to his ownership of the property, and right to sell the same as his own, or as agent for his mother, would not prejudice her right or title unless there was some evidence from which the jury might find that such claim of the son was in some way acquiesced in by the mother. There was no such evidence in the case. These principles are elementary and need no citation of authority for their support. Any other rule would imperil the rights of the owner of personal property in all cases where his infirmities or necessities compel him to entrust its management and control to others.

*2. PRINCIPAL and agent: unauthorized sale.*

The instructions to the jury asked by defendant, as to the effect of the control of the team by the son and his assumption of ownership and agency to sell, were properly refused by the court, because there was no evidence to show that plaintiff ever had knowledge of such claim of ownership, agency, or right to sell.

III. The defendant asked the court to instruct the jury as follows: "Even if the jury should find from the evidence that there was any fraud or deception used by any person in the sale of said property to the said John Coffeen by the said Charles Hinkson, such fraud or deception would not vitiate or affect the sale and transfer of said property to the defendant, unless the jury further find that the said defendant knew of or was a party to such fraud or deception at the time."

*3. ——: ——: fraud.*

The instruction was refused, and we think this ruling of the court was correct. The plaintiff claimed to be the owner of the property. If she was not the owner, but the title was in her son, she could not recover. If she was the owner and had authorized her son, as her agent, to sell, she could not recover. These were the questions to be determined by the jury. The plain-

tiff did not seek to recover because of a fraud in the sale, but because she was the owner and did not authorize a sale.

IV. The court, on its own motion, instructed the jury as follows: "4. If you find from the evidence that the plaintiff, Mary J. Hinkson, was the owner of the horses in controversy prior to the transactions between the witnesses, Charles Hinkson and John Coffeen, then you should find that she is still the owner and entitled to the possession of them, unless you further find that the said Charles Hinkson was the agent of plaintiff, and as such had from her authority to sell, and did sell them to the witness, John Coffeen. And the mere statement or declaration of the said Charles Hinkson that he was such agent and had such authority is not competent to establish, and does not establish, such agency or authority."

It is urged that this instruction is objectionable because it does not define what is requisite to constitute an agent. We think the jury could not have failed to understand that if Charles Hinkson had authority from plaintiff to sell he was an agent for that purpose.

Said instruction is further objected to because it assumes, and substantially states to the jury, that Charles Hinkson's declarations were the only evidence to show his agency. As we understand it, no assumption whatever is made as to what the evidence in the case was. The jury were only told that the agency could not be established by the declarations of the party assuming to act as agent. No one will doubt the correctness of this proposition.

V. It appears that the defendant did not deliver the team to the officer who executed the writ of replevin, but gave a delivery bond in the statutory form. A short time afterward one of the horses died while in defendant's possession. The court instructed the jury that, if the plaintiff was entitled to recover, the measure of her damages by reason of the wrongful detention would be the same as if both horses were living, and that in fixing the value of the horses they should disregard the fact that one had died. The giving of these instructions is assigned as error.

4. REPLEVIN: measure of damages.

The defendant's obligation, measured by the delivery bond,

was to deliver the property to the plaintiff, if she recovered judgment therefor, in as good condition as it was when the action was commenced, and that he would pay all costs and damages that might be adjudged against him for the taking or detention of the property. The issues in the case present no question as to the death of one of the horses. It merely appears incidentally in the evidence that one of the horses died in a day or two after the suit was commenced.

We think the defendant's bond cannot be discharged *pro tanto* by showing the mere fact that one of the horses died. By the verdict his detention of the horses was found to be wrongful. His undertaking is absolute to return the property in as good condition as it was when the action was commenced. His obligation is entirely different from that of a bailee rightfully in possession. If he was bound to return the property in as good condition as when the action was commenced, it follows that for failure to deliver he should be liable to the same damages for the detention as though the property had continued in the same condition.

AFFIRMED.