[S. F. No. 10733. In Bank.—October 31, 1927.]

JOHN A. DRINKHOUSE, Administrator, etc., et al., Respondents, v. FRANK VAN NESS, Defendant, and PACIFIC SURETY COMPANY, Intervener and Appellant.

[S. F. No. 3552. In Bank.—October 31, 1927.]

JOHN A. DRINKHOUSE, Administrator, etc., et al., Appellants, v. FRANK VAN NESS, Defendant, and PACIFIC SURETY COMPANY, Intervener and Respondent.

[1] NEW TRIAL — ORDER PASSING ON MOTION — LACK OF POWER TO VACATE.—When a motion for a new trial has been made in due form, upon a settled statement, and the court has passed on the

---

1. See 20 Cal. Jur. 204; 20 R. C. L. 312.

motion, the order regularly made is conclusive so far as the court making it is concerned. It cannot afterward, even on motion, vacate the order and decide the matter anew; but an order irregularly made is not subject to this general rule, and may be set aside on a proper showing, if application is made therefor, in which case it must first be made affirmatively to appear that the order was irregularly or improvidently made.

[2] ID. — RELIEF UNDER SECTION 473, CODE OF CIVIL PROCEDURE — JURISDICTION.—Where no application is made, by proceedings under section 473 of the Code of Civil Procedure, for relief on the ground of mistake, inadvertence, surprise, or excusable neglect, or by a proceeding for an entry *nunc pro tunc*, the trial court is without power to change its order, in passing on a motion for a new trial, on any of those grounds.

[3] ID.—CORRECTION OF RECORD—JUDICIAL ERROR.—If an order entered is not the order made, the record may be corrected to make the entry speak the truth, and the right of the court in this respect is not suspended or impeded by an appeal from the order, nor because the record itself does not show that the entry was incorrect; but the trial court has no authority, under the guise of an amendment, to correct a judicial error, or make of record an order that was never made.

[4] CLAIM AND DELIVERY — REDELIVERY BOND — RIGHT OF SURETY — PARTIES—APPEAL.—In an action in claim and delivery to recover a horse or its value, in which the defendant gave a redelivery bond to recover possession of the horse, the surety on the bond, upon being permitted to intervene in the action to unite with the defendant in resisting the claims of the plaintiffs, became a party to the action and as such was entitled to avail itself of all the procedure and remedies to which the defendant would be entitled for the purpose of defeating the action or resisting the claims of the plaintiffs, including the right of appeal from any judgment against the defendant, and it was aggrieved, in the first place, by a judgment against the defendant, and, in the second place, by a judgment against itself on the redelivery bond.

[5] ID.—MOTION FOR A NEW TRIAL—EFFECT OF ORDER GRANTING.—In such a case, where the intervener sought to have the judgments vacated through the medium of a motion for a new trial, and in the notices of motion placed no limitation as to the issues upon

2. See 20 Cal. Jur. 203, 204.

3. See 18 Cal. Jur. 668; 20 Cal. Jur. 203; 15 R. C. L. 679–681; 20 R. C. L. 513.

4. See 20 Cal. Jur. 526.

5. See 20 Cal. Jur. 199, 206; 20 R. C. L. 313.

which, or the parties between whom, the motion would be made, but gave notice that it would move the court to vacate "the verdict" and the "judgment," "and to grant a new trial of said action," and the order of the court granting the motion was in like general terms, its effect was to vacate and set aside the verdict and the judgment resting thereon, and, pending a reversal on appeal, to reopen all issues in the case for retrial, the parties being thereby placed in the position they held before any trial had been had.

[6] ID.—PLEADING—COUNTERCLAIM—NEW TRIAL.—Where the pleading filed by the intervener in such case was denominated a complaint in intervention but was in effect an answer to the complaint of the plaintiffs, it in no sense constituted the plaintiffs defendants or cross-defendants, and its allegations were deemed controverted by the plaintiffs under section 462 of the Code of Civil Procedure; and the plaintiffs not being in a position to interpose a counterclaim against the intervener, the trial court erred in overruling the demurrer to a so-called counterclaim and denying a motion for a nonsuit as against plaintiffs on that issue, which error justified the granting of a motion for a new trial to the intervener.

[7] ID.—REDELIVERY BOND — LIABILITY OF SURETIES. — In such a case, where the liability of the intervener on its undertaking was, by the express terms of the bond, conditioned upon such redelivery being "adjudged," there could be no breach of the condition to deliver the property to the plaintiffs, in case the return thereof should be awarded, until a judgment or an order was entered for a return, and, therefore, an attempt to recover on the redelivery bond in the action for the recovery of the horse was premature, and no cause of action was stated, for which error the trial court was justified in granting a motion for a new trial to the intervener.

[8] ID.—DEMAND FOR RETURN OF PROPERTY—WHEN UNNECESSARY.—Where the defendant in an action in claim and delivery sets up in his answer ownership and right of possession in himself of the property sued for, this renders proof of demand before action unnecessary.

[9] ID.—OWNERSHIP OF PROPERTY—PARTNERSHIP—SUFFICIENCY OF EVIDENCE.—In this action in claim and delivery it is held that the evidence warranted the finding of the jury and the judgment that the plaintiffs were the owners of the property in question and

---

6. See 20 Cal. Jur. 524.

8. Necessity for demand in replevin, note, 8 Am. St. Rep. 753. See, also, 5 Cal. Jur. 169; 23 R. C. L. 888.

that no partnership therein existed between them and the defendants.

[10] ID.—JUDGMENT—DAMAGES.—In an action in claim and delivery the plaintiffs, who recover, are entitled to a judgment for the value of the property, not as damages for its conversion, but as a substitute for and in lieu of the property, and are, in addition, entitled to a judgment for damages for the taking and withholding of the property.

[11] ID.—VALUE OF PROPERTY—TIME FOR ESTIMATE—EVIDENCE—INSTRUCTION.—In an action in claim and delivery to recover a horse or, in case recovery cannot be had, the value thereof, evidence to establish the value of the horse at the time of the wrongful taking is admissible, and an instruction to the jury that in case it finds for the plaintiffs it must, in fixing the damages, find the value at that time and award that amount to the plaintiff is correct.

[12] ID.—LOSS OR DESTRUCTION OF PROPERTY—LIABILITY OF PARTY IN POSSESSION.—Neither a plaintiff in replevin who has given a bond and taken possession of property nor a defendant who, by giving a bond, has retained or repossessed himself of the property, is relieved of liability therefor under his bond by its loss or destruction while in his possession pending the action.

[13] ID.—VALUE OF HORSE—EVIDENCE—NONPREJUDICIAL ERROR.—In an action in claim and delivery to recover a horse or its value in case delivery cannot be had, which horse was formerly used as a race-horse and at the time of the taking for breeding purposes, in which action there was no allegation of special damage, the admission, over the objection that it was outside the issues, of evidence of the amount of money that the horse had won as a race-horse and of the colts it had sired and as to the character and performance of the various colts, was not reversible error, where plaintiffs admitted that at the time of the taking the horse was not used or useful for racing and also that plaintiffs did not own the colts and did not claim to have been damaged by reason of any money won by them.

[14] ID.—PLEADING—SPECIAL DAMAGE.—It is the rule that such damages as do not ordinarily arise from the breach complained of,

10. Damages for detention of property, note, 30 L. R. A. (N. S.) 370.

11. See 5 Cal. Jur. 205; 23 R. C. L. 914.

12. Liability for loss or destruction of property, notes, 69 L. R. A. 283; 31 A. L. R. 1290. See, also, 23 R. C. L. 906,

14. See 8 Cal. Jur. 889; 8 R. C. L. 612.

but depend upon the peculiar circumstances of the case, are special damages, which must be pleaded.

[15] ID.—VALUE OF HORSE AND COLTS—RACING HISTORY.—In such a case, evidence as to the racing history of the horse in question and as to the character of its progeny and their racing ability tended to establish the peculiar value of the horse as a sire of colts, admittedly the only purpose for which the horse was fitted at the time of the taking, and it was proper to instruct the jury that such value was "deemed to be its value" against the defendants.

[16] ID.—DETENTION OF PERSONAL PROPERTY—INTEREST—DAMAGES.—While ordinarily, in replevin, loss of use and other injuries resulting from the taking and withholding of personal property may be compensated by allowing the successful party to recover interest on the value of the property from the time of the taking to the date of the verdict, he is not confined to interest as damages if he can establish the fact that the value of the use of the property of which he was deprived exceeded the interest; and where the property has a usable value, he is entitled to recover as damages for its detention the reasonable value of such use during the period he was wrongfully deprived thereof up to the time of the rendition of the judgment.

[17] ID.—EXPENSE OF PURSUIT OF PROPERTY—ATTORNEY'S FEES—IMPROPER ALLOWANCE—MODIFICATION OF JUDGMENT.—It is the practice of the supreme court not to reverse judgments improperly allowing counsel fees incurred for the "pursuit of the property," for such error alone, but to direct a modification of the judgment by deleting therefrom the amount allowed.

[18] ID.—DISMISSAL AS TO ONE DEFENDANT—WHEN NOT RELEASE OF OTHERS.—The voluntary dismissal of an action by the plaintiff as against one defendant does not operate as a release of the other defendants on the theory that they were joint tort-feasors, although the plaintiff and the dismissed defendant by agreement mutually release each other of all claims, where the dismissed defendant does not receive anything or pay anything for executing the release and admits he has no claim against the property in suit and the plaintiff has no claim against him, the release being executed to relieve him of costs, and it not being determined at

16. Value of use of property while deprived of its possession as recoverable by successful party in replevin, notes, Ann. Cas. 1914A, 378; Ann. Cas. 1917B, 1086. See, also, 5 Cal. Jur. 208. Right to damages as distinguished from loss of use of property taken in replevin, note, 6 A. L. R. 478. Right to interest on value of property taken, note, 28 L. R. A. (N. S.) 42.

the time of the dismissal and release that this defendant was a joint tort-feasor but it subsequently appearing in the evidence that he was not.

[19] ID.—INSTRUCTIONS—WRONGFUL TAKING.—In an action in claim and delivery, although certain portions of the instructions to the jury might be construed as assuming "the wrongful taking" of the property in question, the charge as a whole correctly submitted to the jury the question whether there was a taking, and, if there was, whether it was wrongful.

[20] ID.—BURDEN OF PROOF—INSTRUCTIONS.—In such a case, where it was contended that there was a partnership between one of the plaintiffs and one of the defendants in the property in question, an instruction that it required proof of the existence of the partnership to the "satisfaction" of the jury "by a preponderance of the evidence" should have been followed by a further instruction defining what was meant by a preponderance of the evidence, and that such preponderance would be sufficient to justify a finding in favor of the party having the burden of proof, but where such defendant repudiated any claim of partnership and the evidence would not have supported a finding that there was a partnership, the giving of the instruction cannot be held to have been prejudicial error.

(1) 29 Cyc., p. 1029, n. 90.   (3) 3 C. J., p. 1266, n. 12; 29 Cyc., p. 1028, n. 87.   (4) 29 Cyc., p. 925, n. 39.   (5) 29 Cyc., p. 1028, n. 80.   (6) 31 Cyc., p. 522, n. 44, p. 523, n. 51.   (7) 29 Cyc., p. 772, n. 96; 34 Cyc., p. 1576, n. 41.   (8) 34 Cyc., p. 1409, n. 22.   (9) 34 Cyc., p. 1508, n. 61, 65.   (10) 34 Cyc., p. 1550, n. 20.   (11) 34 Cyc., p. 1567, n. 71, p. 1570, n. 90.   (12) 34 Cyc., p. 1574, n. 26, p. 1576, n. 37.   (13) 4 C. J., p. 971, n. 59.   (14) 4 C. J., p. 946, n. 14; 17 C. J., p. 1002, n. 78.   (15) 34 Cyc., p. 1504, n. 36, p. 1550, n. 20. (16) 34 Cyc., p. 1563, n. 36.   (17) 34 Cyc., p. 1566, n. 59.   (18) 34 Cyc., p. 1088, n. 4.   (19) 38 Cyc., p. 1779, n. 76.   (20) 4 C. J., p. 1029, n. 30.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order granting a new trial as to the intervener and reversing it as to the defendant. William R. Daingerfield, Judge. Judgment modified and affirmed. Order granting new trial to intervener affirmed and reversed as to defendant.

The facts are stated in the opinion of the court.

Cooley & Gallagher and Goodfellow, Eells & Orrick for Appellant.

A. E. Shaw for Respondents.

WASTE, C. J.—This case holds the record in this jurisdiction for Rip Van Winkle litigation. The action was initiated in the lower court on the twenty-ninth day of January, 1896. A complaint in intervention was filed August 31, 1899, and various and amended pleadings were interposed. On the thirty-first day of May, 1900, a jury rendered a verdict for the plaintiffs, and judgment was entered against one of the defendants and against the intervener. Notices of appeal from the judgment were filed in July following. In May, 1902, the trial court entered an order and an amended order on motion to vacate judgment and for a new trial. Notices of appeal from these orders were filed in June, 1902. No further proceedings intervened in the lower court or here, other than the preparation and filing of the transcript on appeal on June 15, 1923.

In the "foreword" to their opening brief appellants say: "Since [the trial] many changes have taken place in California procedure, numerous and large volumes of statutes have been added to our libraries by ambitious legislators, and many decisions have been handed down interpreting our laws, old and new." With this brief, but accurate, historical review, and a plea for "indulgence" should their brief "run into more than the usual number of pages," appellants launch their attack on the almost forgotten judgment and rulings of the lower court. In justice to the attorneys now representing both appellants and respondent, it must be stated that they are appearing for the first time in the litigation, the breath of life having been infused into the case through a peremptory order of this court directing the parties to appear and show cause why the appeals should not be dismissed for want of prosecution. After a quarter of a century, mainly given over to repose, the cause stands submitted on points and authorities expeditiously prepared by present counsel.

The action is one in claim and delivery, based upon an alleged wrongful taking. It was instituted by William M. Singerly (now deceased and represented by John A. Drinkhouse, his administrator) and Louis Lammertz, as plaintiffs, against Frank Van Ness, James B. Chase, and certain

fictitious defendants, to recover possession of a horse named "Morello," alleged to be worth $10,000, together with $10,000 damages for the wrongful taking and detention. Pursuant to proceedings for that purpose, the sheriff took the horse from the possession of the defendant Chase. The defendant Van Ness thereupon gave a redelivery bond in the sum of $20,000, executed by Pacific Surety Company, the intervener, and now an appellant here, and the horse was delivered to Van Ness, in whose possession it remained until its death, which occurred before the case came on for trial. Van Ness answered the complaint, denying all the allegations of the plaintiffs, and alleged himself to be the sole owner of the horse and entitled to its possession. Subsequently the Pacific Surety Company, by permission of the court, filed a complaint in intervention, in which, after reciting the various steps in the litigation, and the death of the horse, it alleged that Van Ness was insolvent, and had abandoned the defense to the action, and that the Surety Company, by reason of its having given the redelivery bond, had an interest in the success of the defendant Van Ness in the action and in the defeat of the plaintiffs. It also alleged, as a further defense, a dismissal of the action as to defendant Chase, and his release and discharge by the plaintiffs from the alleged cause of action set forth in the complaint, and from all claims and demands which the plaintiffs had or claimed against him by reason of the matters alleged in their complaint. The Surety Company did not ask for a judgment or for any relief other than that it might be allowed to intervene in the action and unite and join as a defendant, and be permitted to defend against the plaintiffs. The defendant Van Ness failed to plead to the complaint in intervention, and his default was entered. The plaintiffs answered, denying the various allegations, alleging that the Surety Company was amply indemnified for any liability upon the redelivery bond, and putting in issue the allegation as to the release of Chase. In a "supplemental answer to said complaint in intervention" the plaintiffs sought a judgment against the intervener for such amount as by the verdict and judgment in that action might be found to be due from defendant Van Ness to the plaintiffs, not exceeding the amount specified in the redelivery bond. By a subsequent amendment the plaintiffs alleged that,

owing to the death of the horse, it could not be redelivered, and pleaded the matter contained in the "supplemental answer" as and "for a counterclaim against said Pacific Surety Company."

A general and special demurrer of the Surety Company to the answer, challenging the jurisdiction of the court to grant in that action any relief based on the bond, was overruled, and its motions to strike from the files the supplemental answer to the complaint in intervention, and the amendment thereto, were denied. In a second amended complaint, filed by plaintiffs just prior to the trial of the cause in May, 1900, Van Ness was named as the sole defendant, and the death of the plaintiff Singerly and the appointment of John A. Drinkhouse as his administrator were alleged.

Trial was had with a jury. A large amount of evidence was introduced as to the ownership and value of the horse. At the close of the testimony the intervener moved for a nonsuit as against the plaintiffs "upon their cross-complaint" against it, and asked for a directed verdict in favor of the defendant Van Ness upon various grounds. Both motions were denied. The issues were thereupon submitted to the jury, which rendered a verdict for the plaintiffs, against the defendant Van Ness for the return of the horse, or $7,500, its value, in case delivery could not be made, and for $7,500 damages for the detention. By the same verdict it also found "against the intervener, the Pacific Surety Company, a corporation, and in favor of the plaintiffs, upon the bond or undertaking set forth in its complaint in intervention herein in the sum of fifteen thousand ($15,000) dollars being the aggregate sum recovered against defendant Van Ness, it being impossible to deliver or return the stallion Morello, he having died on November 29, 1896, subsequent to the commencement of the action." The judgment entered followed the findings and verdict of the jury.

The Pacific Surety Company thereupon appealed (S. F. No. 10733) from the judgment against itself and from the judgment rendered against the defendant Van Ness. It also gave notice of its intention to move the court to vacate the verdict of the jury and the judgment of the court in favor of the plaintiffs and against the defendant Van Ness, and in favor of the plaintiffs and against itself as intervener, and to grant a new trial upon statutory grounds,

specifying more than 150 particular errors in the admission of evidence and in the charge to the jury alleged to have occurred at the trial, and more than forty particulars in which the evidence is alleged "to be insufficient to sustain the verdict of the jury." Nearly two years afterward, on May 1, 1902, the trial court entered the following order: "In this action the motion for a new trial having been heretofore submitted to the court for consideration and decision and the court having fully considered the same: It is ordered that the said motion be and the same is hereby granted. (Opinion filed.)" One week later, the following "amended order" was entered: "In this action it is ordered that the order of May 1, 1902, be and the same is hereby amended to read as follows: Motion of defendant Frank Van Ness for new trial be denied and motion for new trial of intervener be granted." Following the entry of these orders, the Pacific Surety Company appealed from the order of May 1st, "as amended by the order . . . denying the motion of the defendant Frank Van Ness for a new trial of said action, and from so much of said orders as may, or may be deemed to, deny the motion of said intervener on behalf of said defendant for a new trial of said action, or to deny any part of the said motion of said intervener for a new trial." Although the defendant Van Ness did not appeal, the intervener asserts that it appealed "in his behalf." The plaintiffs appealed (S. F. No. 3552) from the order of May 1st, and from that part of the amended order of May 8th granting a new trial to the intervener, Pacific Surety Company. By stipulation of the parties, and under an order of this court, all appeals are to be heard and determined on the same points and authorities covering all matters before the court for consideration. As the situation of the parties is changed in their relation to the different appeals before the court, it will be less confusing to retain the designations borne in the lower court, to wit, "plaintiffs," "defendant," and "intervener," or to refer to them by name, rather than to use the usual designations, "appellant" and "respondents."

In view of the several appeals taken, it becomes necessary to first determine the effect of the two orders entered by the trial court in its ruling on the motion for a new trial.

If valid, the order of May 8th supersedes the order first made, and is the only order of the court upon the motion for a new trial. (*Garoutte* v. *Haley,* 104 Cal. 497, 500 [38 Pac. 194].) If the order of May 8th were before us on an appeal on the judgment-roll alone, the intendments and presumption of regularity, which lend support to judgments and orders of trial courts under review on appeal, would sustain it; but the matter is before us on a bill of exceptions. It is the contention of the intervener that when the lower court entered the order of May 1st granting a new trial it exhausted its power to pass on the motion, and could not thereafter amend, revoke, modify, or otherwise disturb its judgment in that regard. The second order, that of May 8th, it contends, was a nullity and in nowise affected the status of the case with respect to the first order which, in general terms, granted the motion for a new trial. The contention must be upheld. (*United Railroads* v. *Superior Court,* 170 Cal. 755, 760 [Ann. Cas. 1916E, 199, 151 Pac. 129]; *Holtum* v. *Greif,* 144 Cal. 521, 524 [78 Pac. 11]; *Odd Fellows Savings Bank* v. *Deuprey,* 66 Cal. 168 [4 Pac. 1173].) [1] When a motion for a new trial has been made in due form, upon a settled statement, and the court has passed on the motion, the order regularly made is conclusive so far as the court making it is concerned. It cannot afterward, even on motion, vacate the order and decide the matter anew. (*Coombs* v. *Hibberd,* 43 Cal. 452; *Dorland* v. *Cunningham,* 66 Cal. 484 [6 Pac. 135].) There are, of course, exceptions to the general rule. An order irregularly made is not subject to it, and may be set aside on a proper showing, if application is made therefor. (*Holtum* v. *Greif, supra; Morris* v. *De Celis,* 41 Cal. 331.) But it should be first made to affirmatively appear that the order was irregularly or improvidently made. (*Carpenter* v. *Superior Court,* 75 Cal. 596 [19 Pac. 174].) In this case there is nothing in the record, or on the face of the later order, to impeach the correctness of the order of May 1st. [2] No application was made by proceedings under section 473 of the Code of Civil Procedure for relief on the ground of mistake, inadvertence, surprise, or excusable neglect, or by a proceeding for an entry *nunc pro tunc.* Consequently the trial court was without power to change the order on

any of those grounds. (*Frost* v. *Los Angeles Ry. Co.*, 165 Cal. 365, 368 [132 Pac. 442].)

[3] The plaintiffs contend that the order of May 1st was not the one actually made on the motion for a new trial, and that the order of May 8th was undoubtedly made to correctly state the fact. If an order entered is not the order made, the records may be corrected to make the entry speak the truth (*Whitney* v. *Superior Court*, 147 Cal. 536, 541 [82 Pac. 37]), and the right of the court in this respect is not suspended or impeded by an appeal from the order, nor because the record itself does not show that the entry was incorrect. (*Biaggi* v. *Ramont*, 189 Cal. 675 [209 Pac. 892].) But the trial court has no authority, under the guise of an amendment, to correct a judicial error, or make of record an order that was never made. (*Kaufman* v. *Shain*, 111 Cal. 16, 19 [52 Am. St. Rep. 139, 43 Pac. 393].) Yet the record indicates that is precisely what was attempted to be done in the present case. The later order does not purport to correct the entry of the first; neither is there anything on its face or in the record from which it may be gathered that such was its purpose. It stands out clearly as an order purporting to "amend," that is to change, an order previously made.

Plaintiffs assert that, with "two motions" for a new trial before it, the trial court merely "granted the motion," making its order void for uncertainty; that it was impossible to ascertain therefrom which motion was granted; and "it was therefore the duty of the court of its own motion to so amend its order as to definitely dispose of both motions for a new trial rather than leave it in such uncertainty as to be void on its face, for all parties to the litigation were entitled to have it definitely known whether both motions were granted, or if both were not granted, then which one was granted." The fallacy of this contention lies in the fact that there was but one motion for a new trial, that of the intervener. It alone was "submitted to the court for consideration and decision," and the court, "having fully considered the same," "granted" the motion by an order couched in plain, certain, and unambiguous language. For that reason, therefore, the contention of the plaintiffs that, if the amended order of May 8th is void, the "motions for a new trial" have not been determined and are still pending, falls of its own weakness. It therefore follows that the

order of May 8th, purporting to amend the order granting
intervener's motion for a new trial, must be held to be a
nullity, and effective for no purpose.

[4] This conclusion brings us to the consideration of the
correctness and effect of the order of May 1st granting a
new trial. The interest of the Pacific Surety Company in
the success of the defendant Van Ness was apparent, for the
judgment, if any, to be rendered against him would fix its
liability upon the redelivery bond. Upon being permitted to
intervene, it became a party to the action, "uniting with
the defendant" in resisting the claims of the plaintiffs. As
such party it was entitled to avail itself of all the procedure
and remedies to which the defendant would be entitled for
the purpose of defeating the action or resisting the claims
of the plaintiffs, including the right of appeal from any
judgment against the defendant. (*People ex rel. Fogg* v.
*Perris Irr. Dist.*, 132 Cal. 289, 290 [64 Pac. 399, 773];
*Boskowitz* v. *Thompson*, 144 Cal. 724, 729 [78 Pac. 290].)
It was aggrieved, in the first place, by the judgment against
Van Ness (*Coburn* v. *Smart*, 53 Cal. 742, 745), and, in the
second place, by the judgment against itself on the redelivery
bond, and appealed from each. Collateral to the appeal, it
sought to have the judgments vacated through the medium
of a motion for a new trial. [5] In the notices of motion
the intervener placed no limitation as to the issues upon
which, or the parties between whom, the motion would be
made. It gave notice that it would move the court to vacate
the "verdict" and the "judgment," "and to grant a new
trial of said action." The order of the court granting the
motion was in like general terms. Its effect, therefore, was
to vacate and set aside the verdict and the judgment resting
thereon and, pending a reversal on appeal, to reopen all
issues in the case for a retrial. The parties were thereby
placed in the position they held before any trial had been
had. (*Kent* v. *Williams*, 146 Cal. 3, 7 [79 Pac. 527].)

[6] Little need be said in affirming the action of the
lower court in granting a new trial to the intervener. Plain-
tiffs concede that they could not have joined the surety, in
an action upon the redelivery bond, with the defendant Van
Ness in the action based upon his tort; yet that is what was
actually attempted to be done. Although the pleading filed

by the intervener was, as is usual, denominated a "complaint in intervention," it was, in effect, but an answer to the complaint of the plaintiffs. It in no sense constituted the plaintiffs defendants or cross-defendants. Its allegations were deemed controverted by the plaintiffs under section 462 of the Code of Civil Procedure. (*People ex rel. Fogg* v. *Perris Irr. Dist., supra.*) Consequently the plaintiffs were not in position to interpose a "counterclaim" against the intervener, for a counterclaim "must be one existing in favor of a defendant and against a plaintiff." (Code Civ. Proc., secs. 438, 439.) It must, in some way, qualify or defeat the judgment to which the plaintiff is otherwise entitled. (*Meyer* v. *Quiggle,* 140 Cal. 495, 499 [74 Pac. 40].) The trial court therefore erred in overruling the demurrer interposed by the intervener to the so-called "counterclaim" advanced by the plaintiffs, and in denying intervener's motion for nonsuit as against plaintiffs on the same issue; and its error warranted the granting of a new trial. The granting of the motion was justified for another reason. [7] The liability of the intervener on its undertaking was, by the express terms of the bond, conditioned upon such redelivery being "adjudged." There could be no breach of the condition to deliver the property to the plaintiffs, in case return thereof should be awarded, until a judgment or an order was entered for a return. (34 Cyc., p. 1576; Wells on Replevin, sec. 430; Cobbey on Replevin, sec. 1311; see, also, *Mitchum* v. *Stanton,* 49 Cal. 302.) Therefore, the attempt to recover on the redelivery bond in the action for the recovery of the horse was premature, and no cause of action was stated. Plaintiffs contend that, because the intervener "injected itself into the litigation . . . and the trial court . . . in the exercise of its general jurisdiction, had the power to entertain and decide such a suit [on the redelivery bond] when properly commenced, based on the judgment against Van Ness," it should not be held reversible error "because the court did in this action what it would have been compelled to do if a separate action had been commenced by the plaintiffs against the intervener upon the bond." The contention does not require further consideration.

We are now brought to a consideration of the appeal of the plaintiffs (No. 3552) from the order of May 1st granting a new trial of the action. The intervener, now the respondent, takes the position that the plaintiffs failed to establish their right to institute and maintain the action, for which reason it contends the motion was properly granted. Briefly, its contentions are that the evidence was insufficient to show a wrongful taking; that there was no proof of a demand made on the defendants before suit was begun; and that it was shown that a partnership existed between the plaintiffs and defendant Van Ness for raising, handling, and maintaining the horse, which was a part of the capital of the partnership, of which there had been no dissolution or a final accounting. As to the necessity of proof of a demand for the return of the horse, the evidence clearly indicates that the possession of the defendant Chase was but the possession of the defendant Van Ness. A demand was made on Van Ness by the attorney for the plaintiffs, and on their behalf, before the action was begun. [8] Had that not been done, it would not have availed the defendants. The defendant Van Ness in his answer set up ownership and right of possession in himself, which rendered proof of demand unnecessary. (5 Cal. Jur. 169.)

[9] We are of the view that the evidence warranted the finding of the jury and the judgment that the plaintiffs were the owners of "Morello," and that no partnership in the horse existed between them and the defendant Van Ness. Taking the documentary evidence and the oral testimony of the parties as a whole, there are some conflicts, but the purport of it is that in 1892 the horse, then two years old, was purchased by or through defendant Van Ness, who immediately transferred a half interest in the animal to plaintiff Singerly for the sum of $2,250, executing a receipt for the amount as "a bill of sale." At or about the same time, by another bill of sale, he transferred the other one-half interest in the horse to the plaintiff Lammertz for a like amount, "and $250 on said colt's first winnings." The fact is that Van Ness bought the horse with the money of the two plaintiffs, and never had or retained any interest whatever in the animal. Neither Singerly nor Lammertz knew of the interest of the other in the horse, but each supposed that Van Ness

and he owned "Morello." Laboring under such misapprehension the owners permitted Van Ness to train and handle the horse for racing, and later for breeding purposes, on the basis of equally sharing the expenses and dividing the profits. "Morello" was a success both as a race-horse and as a sire of colts, and Van Ness paid to each of the plaintiffs, while he was handling the horse, something like $20,000 as his share of the earnings. It appears that Van Ness was able to successfully carry out his deceit concerning the ownership of the horse until the two owners discovered the real facts shortly before the commencement of the replevin suit. There was, it is true, the arrangement between the three parties (its exact details unknown to the owners) for the racing, handling, and maintenance of the horse, but the record is devoid of any evidence to support the contention that any partnership in the ownership of the horse existed. Its earnings actually belonged to the plaintiffs. The expenses were paid out of the earnings. The arrangement was one by which Van Ness was an employee of the plaintiffs, his compensation being one-half of the net proceeds derived from the use of the horse. Under the facts here disclosed, the owners had the undoubted right to terminate the arrangement at will. They were certainly justified in doing so on learning of the true relation they bore to each other and to Van Ness, and in demanding and taking possession. The question of any accounting of the earnings of the horse cannot enter into this action to recover possession. The defendant Van Ness did not claim a partnership existed. His line of defense was that he was the sole owner of the horse, that the interest of the plaintiffs was merely that of· lienholders, and that the debt secured by such liens had been paid. The evidence supports the finding of the jury and the judgment as to these contentions, and establishes that the taking was wrongful.

[10] This action being one in replevin, the plaintiffs were entitled to a judgment for the value of the horse, not as damages for its conversion, but as a substitute for and in lieu of the property, and were, in addition, entitled to a judgment for damages for the taking and withholding of the property. (*Nahhas* v. *Browning*, 181 Cal. 55, 57 [6 A. L. R. 476, 183 Pac. 442].) [11] They introduced

much evidence for the purpose of establishing the value of the horse at the time of the wrongful taking, and the court instructed the jury that in case it found for the plaintiffs it must, in fixing damages, find the value at that time and award that amount to the plaintiffs. The jury followed the instructions, and returned a verdict for the plaintiffs and against the defendant Van Ness for the return of the horse, or, if a return could not be had, then for the value at the time of the taking, which value it found to be $7,500. The intervener contends that the value of the horse should have been assessed as of the time of the trial, and not as of the time of the wrongful taking, citing a number of authorities which support the contention. (*Phillips* v. *Sutherland,* 2 Cal. Unrep. 241 [2 Pac. 32]; *Nelson* v. *Yonge,* 73 Cal. App. 704, 710 [239 Pac. 67]; *Gray* v. *Robinson,* 4 Ariz. 24 [33 Pac. 712]; *Gardner* v. *Brown,* 22 Nev. 156, 158 [37 Pac. 240].) In *Phillips* v. *Sutherland, supra,* the court said: "If plaintiff recovers in such an action [replevin], he is entitled primarily to the very property and the value which he is to receive, instead of the property, is the value as of the day of trial." There are decisions from other jurisdictions holding a directly contrary view. (See 42 Am. Dig. [Cent. ed.], p. 2447, sec. 420 et seq.) There is considerable divergence in the decisions as respects the time at which the value of the property should be assessed, and this is due largely to the difference in the statutes. (34 Cyc., p. 1570.) The general rule in replevin is, according to the editors of Ruling Case Law, that the damages will be the value of the property at the time of taking, with interest from that time; "but," they say, "a number of well-reasoned cases support the rule that the value to be assessed is the value at the time of the trial." (Vol. 23, p. 914.) "The proper rule . . . is to assess the value at the date of the wrongful taking. . . . The right of a party in replevin depends upon his right to possession at the time of commencement of the action and damages can only be given for interference with that possession." (Cobbey on Replevin, p. 507.) But, assuming that the general rule in this state is as laid down in *Phillips* v. *Sutherland, supra,* and *Nelson* v. *Yonge, supra,* it can apply only when the property sought to be recovered is in existence at the

time of the trial. If it is not in existence at that time, it is impossible to assess its value as of that date.

In the present case, the horse, the subject of the action, was dead when the cause came on for trial, and, of course, had no value. Notwithstanding that fact, the defendant Van Ness and his surety, the intervener Pacific Surety Company, are liable to the plaintiffs on the redelivery bond for the value of the horse. (*Jacobs* v. *Walker*, 90 Okl. 209 [31 A. L. R. 1287, 216 Pac. 935].) The measure of recovery by the plaintiffs was not affected by the death of the property in suit in the hands of the defendant, whether by accident or through the fault of the latter. (34 Cyc., p. 1567; Wells on Replevin, secs. 600, 601; *Hinkson* v. *Morrison*, 47 Iowa, 167.) [12] The decided weight of authority appears to be to the effect that neither a plaintiff in replevin who has given a bond and taken property nor a defendant who, by giving bond, has retained or repossessed himself of the property, is relieved of liability therefor under his bond by its loss or destruction while in his possession pending the action. (*De Thomas* v. *Witherby*, 61 Cal. 92, 97 [44 Am. Rep. 542]; *Three States Lumber Co.* v. *Blank*, 133 Fed. 479 [69 L. R. A. 283, and note].) In *De Thomas* v. *Witherby, supra,* this court said (p. 99) : ''To permit a defendant who wrongfully takes possession, to claim that he holds it at the risk of the real owner, and not at his own, and claim immunity for accident, would be unjust in the extreme. The wrongful taker of property, when called upon to surrender it to the rightful owner or pay the value, cannot defend himself from judgment by showing his inability to deliver it through death or otherwise.'' It was, therefore, proper, in this case, for the court to admit the evidence complained of, and to instruct the jury to assess the value of the horse as of the date of the wrongful detention, in case it should find for the plaintiffs. Its further instruction, that the fact that the horse died after the action was begun was no defense to the action, was also proper.

[13] It was alleged in the complaint that the defendants unlawfully held and detained the horse from the possession of plaintiffs, to their damage in the sum of $10,000, the value of the property, ''and the further sum of Ten Thousand (10,000) Dollars damages for the detention thereof.''

There are no allegations of special damage. In addition to assessing the value of the horse at $7,500 at the time of the taking, the jury also found for the plaintiffs "for the sum of Seventy-Five hundred (7500) Dollars damages for the taking and detention." Over repeated objections of the intervener that the plaintiffs were seeking to introduce evidence outside the issues, the trial court admitted much documentary evidence and oral testimony. A compilation prepared from "Goodwin's Turf Guide," devoted to giving the results of horse-races, was admitted, from which it appeared that "Morello" had won more than $80,000 as a race-horse, and had sired many colts which, in turn, had won much money on the track. No objection was offered to the compilation instead of the "Guide," but the introduction of the evidence was objected to on the ground that it did not tend to prove any issue in the case, "there being no allegation of special damage for money lost by reason of the racing qualities of the horse." Evidence of witnesses as to the character and performance of the various colts was also objected to as not within the issues made by the pleadings, and as calling for an opinion or estimate of the value of the horse for special purposes, and for damages special in their nature and not alleged in the complaint. In connection with this evidence and testimony, the plaintiffs, by way of a stipulation, admitted that at the time of the taking in January, 1896, the horse was not used or useful for race-horse purposes because of a defect in one of his hoofs or legs, due to his breaking down on the race-track, and was at that time used only for the purpose of siring. It was also admitted that, as the plaintiffs did not own the colts, they did not claim to have been damaged by reason of any money won by the progeny. Over the same objection, that it tended to prove a special element of damage not pleaded, evidence was introduced as to the value of the use of "Morello" for breeding purposes "at the time of the supposed conversion, or during the supposed period of detention."

[14] It is, of course, the rule that such damages as do not ordinarily arise from the breach complained of, but depend upon the peculiar circumstances of the case, are special damages, which must be pleaded. (*Berry* v. *Bank of Bakersfield,* 177 Cal. 206, 210 [170 Pac. 415].) In *Steven-*

*son* v. *Smith,* 28 Cal. 102 [87 Am. Dec. 107], the plaintiff in an action for the recovery of a mare and colt, sought, under a general allegation of damage, to recover for the loss arising from the act of the defendants in giving the animals poor pasturage, and the further circumstance that the mare was a brood mare and, by the detention, the breeding season was lost. Commenting on that case, the court, in *Berry* v. *Bank of Bakersfield, supra,* said: "It was very properly held that the first of these items did not result from the detention itself, but from the improper conduct of the defendants in keeping the animals, while the second item depended upon the extraordinary value of the animal for a particular purpose. These items, therefore, were not embraced within an allegation of general damage." While not disputing the force of the rule contended for by the intervener, we are not prepared to say that the admission of the evidence objected to warranted the granting of a new trial. We are of the view that it does not warrant a reversal of the judgment. Since the trial of this case in the court below, and pending the submission of the appeal, the constitutional provision (sec. 4½, art. VI) has been adopted, greatly extending the powers of this court to consider the evidence in passing on alleged errors relied upon for a reversal of a judgment. After our examination of this entire cause, including the evidence, we are satisfied that the error in the admission of the evidence complained of did not result in a miscarriage of justice. The stipulation or admission of the plaintiffs that, at the time of the taking of "Morello" by the defendants, the horse was no longer fit for racing purposes, entirely removed from the consideration of the jurors any possible claim that the horse longer had any value for such purposes. Furthermore, and notwithstanding the previous objection to their introduction, we find that, by stipulation of the parties, the books, "Goodwin's Turf Guide," were admitted in evidence "for all purposes."

[15] Aside from these considerations, the testimony and evidence as to the racing history of "Morello," and as to the character of the progeny and their racing ability, tended to establish the worth of the horse as a sire of colts, the only purpose for which, the admission of the plaintiffs and the intimate knowledge of all those connected with the

action showed, the horse was fitted at the time of the taking. It tended to fix the peculiar value of the horse as a sire of valuable racing stock. The horse undoubtedly had such a peculiar value to the plaintiffs, and the defendants had intimate and full knowledge of such fact, for Van Ness had been handling the horse for the very use that gave it that peculiar value. Such value was, therefore, "deemed to be its value" against the defendants (Civ. Code, sec. 3355), and the court properly so instructed the jury. This was the theory accepted by the trial court, for, while there was a wide divergence in the testimony as to the value of "Morello," varying, according to the estimates of the witnesses, from a few hundreds to many thousands of dollars, the court instructed the jury that it should assess the value "at the reasonable market value of the horse at the time of the taking . . . what the horse could have reasonably been sold for as a stallion for breeding purposes, to a person who wanted him for that purpose, if he was offered for sale in the open market." In view of the evidence and the instruction, we cannot say that the amount arrived at by the jury was not proper.

[16] Ordinarily, in replevin, loss of use and other injuries resulting from the taking and withholding of personal property may be compensated by allowing the successful party to recover interest on the value of the property from the time of the taking to the date of the verdict. However, he is not confined to interest as damages, if he can establish the fact that the value of the use of the property of which he was deprived exceeded the interest. Where the property has such a usable value, he is entitled to recover as damages for the detention the reasonable value of such use during the period he was wrongfully deprived thereof up to the time of the rendition of the judgment. (*Nahhas* v. *Browning, supra.*) The reasons for this rule are clearly stated in California Jurisprudence (vol. 5, p. 208). By depriving the plaintiffs of the possession of "Morello," the defendant Van Ness prevented them from obtaining any earnings from him as a sire of colts. Evidence was introduced by both sides as to the physical condition of the horse, and his soundness and health at the time of the commencement of the action. While the evidence was contradictory, there is much in the record from which

we may conclude that the jury was warranted in finding that, at the time, the horse was in good health and physical condition, and in every way fitted for use as a stud for breeding purposes, and that he was in good condition and in the best of health at the time he was repossessed by Van Ness under the redelivery bond. The stallion was then about six years old, and there was testimony that he might reasonably be expected to be good as a sire until he was eighteen or twenty years old. The case was tried more than four years after the taking, and the evidence was to the effect that the reasonable value of his services during that period would have been from $4,500 to $6,000 per year.

[17] Evidence was admitted, over the objection of intervener, as to expenses incurred by plaintiffs in pursuit of and for locating the horse prior to the commencement of the action, including $500 for the services of an attorney in that regard. Plaintiffs admit that the admission of the testimony constituted error, but contend that "the items were small, and apparently the jury gave no consideration thereto." The testimony was that such expenses amounted to nearly $1,000, including the services of the attorney. The court instructed the jurors that they "must allow the plaintiffs as damages for the taking a fair compensation for the time and money properly expended in the pursuit of the horse." The award for damages is not segregated as to the items allowed, but is for a lump sum. Therefore, we cannot say, in view of the large amount of the special damages fixed by the jury, that the evidence was not considered. It appears to be the practice in this court not to reverse judgments improperly allowing counsel fees incurred for the "pursuit of the property," for such error alone, but to direct a modification of the judgment by deleting therefrom the amount allowed. (*Hays* v. *Windsor*, 130 Cal. 230, 236 [62 Pac. 395]; *Harris* v. *Smith*, 132 Cal. 316, 319 [64 Pac. 409].) In this case the amounts claimed to have been so spent were no doubt definitely fixed in the minds of the jurors and, in view of the court's instruction, we may safely assume that they included the entire amount of the $500 attorney's fees in their award of damages. For that reason the judgment against the defendant should be reduced by that amount.

[18]  Another contention of the intervener is that the defendants Van Ness and Chase were joint tort-feasors, and that, by their voluntary dismissal of the defendant Chase, the plaintiffs released the defendant Van Ness as well.  The action was dismissed as to Chase "without costs to either plaintiffs or said defendant," pursuant to an agreement between the plaintiffs and Chase, by which the plaintiffs released him "from all claims and demands of whatsoever nature and description," excepting claims for moneys collected by Chase from third parties for the use of the stallion.  Chase, in like terms, released the plaintiffs, the consideration of the agreement being the "mutual release of all claims" each to the other.  Chase testified that he did not receive anything or pay anything for executing the release; that at the time it was executed he had no claim against the horse; that the plaintiffs had no claim against him; and that the release was executed to relieve him of costs in the suit.  The question whether Chase was a joint tort-feasor with Van Ness had not been determined.  On the evidence subsequently admitted it would appear that he was not.  The plaintiffs received nothing from Chase. Nothing which he did amounted to or was received as a satisfaction of the claim.  The plaintiffs were not paid for the loss and injury they had suffered.  There was nothing, as we view it, in the transaction between the plaintiffs and Chase, relating to or included in the dismissal, that amounted to a retraxit.  Under a proper instruction on the subject, the jury reached the same conclusion.

[19]  Complaint is made by the intervener about certain instructions given to the jury.  It is contended that certain portions of the charge assumed a "wrongful taking" of the horse.  Read in their severalty they might have that effect, but the charge as a whole correctly submitted to the jury the question whether there was a taking, and, if there was, whether it was wrongful.  [20]  The instruction that it required proof of the existence of a copartnership between plaintiff Singerly and defendant Van Ness to the "satisfaction" of the jury "by a preponderance of the evidence" should have been followed by a further instruction defining what is meant by preponderance of the evidence, and that such preponderance would be sufficient to justify a finding in favor of the party having the burden of proof.  (*Boa* v.

*San Francisco-Oakland Terminal Rys.,* 182 Cal. 93 [187 Pac. 2] ; *Fidelity & Casualty Co.* v. *Paraffine Paint Co.,* 188 Cal. 184, 195 [204 Pac. 1076].) But, as the defendant Van Ness himself repudiated any claim of partnership, and as the evidence would not have supported a finding that there was a partnership, the giving of the instruction cannot be held to have been prejudicial error. Other contentions concerning the giving and refusal of instructions are answered by our discussion and conclusion on the matters already considered.

The order of the trial court granting the motion for a new trial is affirmed as to the intervener Pacific Surety Company and reversed as to the defendant Van Ness.

The trial court is directed to modify the judgment appealed from by reducing the amount of the damage awarded for the wrongful detention of the horse to seven thousand ($7,000) dollars, and as thus modified the judgment shall stand affirmed as to the defendant Van Ness, to wit, for the sum of fourteen thousand five hundred ($14,500) dollars.

Curtis, J., Richards, J., Preston, J., Shenk, J., Seawell, J., and Langdon, J., concurred.

Rehearings denied.