[Civ. No. 6791.   Third Dist.   June 17, 1943.]

M. MARKALL, Respondent, v. M. R. PETERSON, Appellant.

Charles L. Gilmore for Appellant.

H. Ward Sheldon and John W. Dinkelspiel for Respondent.

ADAMS, P. J.—Plaintiff brought this action for the recovery of the possession of a Diesel engine and generator or for the value thereof alleged to be $2,500. Defendant answered and filed a cross-complaint, alleging fraud on the part of plaintiff and praying for damages in the sum of $11,000. After trial by the court sitting without a jury, findings in favor of plaintiff were made and judgment for the amount of his demand, plus attorney's fees and costs, followed. The evidence which amply sustains the findings of the trial court shows that on November 28, 1939, plaintiff agreed to sell and defendant agreed to buy a Fairbanks-Morse Diesel Engine, Generator and Excitor, at an agreed price of $2,500. On that date defendant paid down $500 and received therefor a receipt which recited that the seller had received $500, that when completed balance of $2,000 was to be paid $750 in cash and $1,250 on contract of 12 months from date of delivery, "Engine and Generator to be working order upon acceptance by M. R. Peterson." On December 16, 1939, defendant paid plaintiff the additional sum of $750 and on said date the parties executed a formal written conditional sale contract which provided that the balance of the purchase price ($1,250) should be paid in twelve equal monthly installments, that the equipment therein described was "used," that it was to be installed at the Giant King Mine in Nevada County. It also provided:

"The undersigned hereby acknowledges and accepts delivery at ... the property listed in the within contract pursuant to its terms."

"The purchaser acknowledges that said property covered by this contract is in good order and condition when delivered and accepts the same without warranty of mechanical or other condition."

"It is expressly agreed that any claim for defects or defective parts shall be no defense for non-payment of any sums due under this contract, but that all such sums shall become due and payable in accordance with this agreement and shall be immediately paid when due."

"It is understood that the seller or his assignee shall not be bound by any agreement or representation not contained in this agreement, which purchaser hereby admits he has read and understands."

Said equipment was delivered at said mine on December 16th, at which time it had not been tested, but delivery was

made at the instance of defendant and against the advice of plaintiff. Upon its installation it was discovered that it was not in working order and plaintiff thereupon arranged to have same repaired, and for the purposes of such repair defendant delivered said equipment at the Fairbanks-Morse plant in San Francisco on January 15, 1940. There extensive repairs were made and the machine placed in good working condition at a total cost of $1,182.02, which sum was paid by plaintiff. On February 12th defendant accepted said equipment at San Francisco and returned the same to the mine, but he made no effort to use it and he did not pay any of the installments provided to be paid. The contract provided that title to the property should remain in the seller until all payments were made, and that should purchaser fail to make any of said payments the seller might take immediate possession of the property and declare the purchaser in default, in which event all of the rights and equities of the purchaser in and to said property should immediately cease. About March 9, 1940, plaintiff wrote defendant demanding that he pay the balance of the purchase price for the equipment; and shortly thereafter he went to the mine where he again demanded payment or that he be permitted to take the property, but defendant failed and refused to do either. On May 16th, while said equipment was still in the possession of defendant, same was destroyed by fire. The court found that "the reasonable market value of the said equipment at the time of said sale, and prior to its destruction by fire, was $2500.00."

Appellant makes no complaint that the evidence does not support the findings, but he does contend that at most the limit of his liability was the balance ($1,250) due on the original purchase price of the equipment, and that the court erred in awarding plaintiff $2,500 as the value thereof; that the court failed to make a finding as to the *time* of the value of the equipment and that, therefore, the judgment is without support; that in the contract of November 28th plaintiff warranted the engine and generator to be in working order upon its acceptance, that on December 16th, when the second contract was signed, plaintiff told appellant the unit was complete and in working order, that defendant relied upon this representation, but that the equipment was not in such condition, and, therefore, said contract was induced by the deceit and misrepresentation of plaintiff; also that as the equipment

252

was to be put in working order before acceptance, and it was never put into such condition, there never had been any acceptance by appellant, and, accordingly, he was not in default in his payments.

■ In support of his first point appellant cites section 3302 of the Civil Code which provides that: ''The detriment caused by the breach of an obligation to pay money only, is deemed to be the amount due by the terms of the obligation, with interest thereon.'' Respondent replies by saying that this is not an action for damages nor a suit for the balance of the purchase price; that upon appellant's breach of the conditional sale agreement respondent could and did elect to declare appellant's interest in the equipment forfeited under the terms of the agreement; and that the fact that appellant could initially have obtained title by paying only the $1,250 due upon the contract is consequently beside the point.

Respondent's contention appears to be sound. The evidence shows that prior to instituting this action plaintiff demanded payment of the balance due or delivery of the equipment, both of which defendant refused. By the terms of the conditional sale contract of December 16th appellant agreed that in case of his default plaintiff might retake the property, whereupon, all of appellant's rights therein would cease. Plaintiff so elected and appellant's rights did cease, and on appellant's refusal to permit plaintiff to take possession this action in claim and delivery was a proper remedy for plaintiff to pursue to obtain such possession; and when, by virtue of the destruction of the property, its delivery became impossible, plaintiff was entitled to recover the value thereof. (*Los Angeles Furniture Co.* v. *Hansen,* 46 Cal.App. 5 [188 P. 292]; *A. Meister & Sons Co.* v. *Harrison,* 56 Cal.App. 679 [206 P. 106]; *McConnell* v. *Redd,* 86 Cal.App. 785, 789 [261 P. 506].) ■ After the institution of this action defendant bonded against delivery, and, as was said in *Drinkhouse* v. *Van Ness,* 202 Cal. 359, 376 [260 P. 869], ''The decided weight of authority appears to be to the effect that neither a plaintiff in replevin who has given a bond and taken property nor a defendant who, by giving bond, has retained or repossessed himself of the property, is relieved of liability therefor under his bond by its loss or destruction while in his possession pending the action.''

■ We find no merit in appellant's contention that the judgment is without support by reason of the insufficiency

of the court's finding as to the time when the property was of the value of $2,500.

Appellant cites *Nelson* v. *Yonge,* 73 Cal.App. 704, 710 [239 P. 67], wherein it is said that in some jurisdictions, including California, where delivery cannot be had the value should be that which the property had at the time of the trial. But the court there also said: ''These decisions proceed upon the theory that, the money being but a substitute for the property, the amount of the alternative money judgment should be fixed by ascertaining it as of the date nearest to the time when the property would be delivered.'' Here it could no longer be delivered, and it had no value at the time of the trial.

In *Drinkhouse* v. *Van Ness, supra,* the value at the time of the wrongful detention of a horse was said to constitute the proper measure where the horse had died before the trial; but we find in neither that case nor in *Nelson* v. *Yonge* any statement that if the exact date of the valuation was not found the judgment would not be sustained. Here the demand was made on March 9, 1940. At the trial plaintiff was asked what was the reasonable value of this equipment at the time he demanded redelivery of it, and he answered: ''It was still worth the twenty-five hundred dollars that I sold it to him for.'' No other witness testified to its value and it is apparent that if a finding of its value ''at the time of its wrongful detention'' had been made, no different value would have been found. The suit was filed April 5 and the property was destroyed May 16, 1940. There is no evidence that the value of the property fluctuated or that it had any other value than $2,500; and the court's finding that its value at the time of the sale and prior to its destruction by fire was $2,500 was sufficiently comprehensive to include its value at the time of the wrongful detention.

We also find no merit in appellant's argument that the contract signed December 16th was induced by fraud and deceit on the part of plaintiff. The court found that it was not true that at the time of the execution of said contract of December 16, 1939, or at any other time, plaintiff informed defendant that he had the said engine and generator in ''A-1'' condition; that it was not true that plaintiff had warranted the condition of said equipment and that it was not true that plaintiff failed to deliver to defendant any part of the equipment provided to be sold by the contract of December 16th; and that all of the allegations of defendant's

cross-complaint inconsistent therewith were untrue. While it does appear that the original receipt signed by plaintiff on November 28, 1939, provided that the engine and generator were to be in working order upon acceptance by appellant, the evidence fully sustains the finding of the trial court that when delivery was taken by appellant in December, 1939, the equipment had not been tested and that delivery was made at the insistence of defendant and against the advice of plaintiff. The latter testified to this effect and stated that appellant insisted upon taking the engine to the mine at that time as he was afraid that later delivery might become impossible because of snow. Plaintiff's employee, Mr. Hill, who had assembled the engine and generator, corroborated plaintiff's testimony, stating that he, too, had objected to appellant's taking the equipment to the mine until they had had time to test it; and that appellant was not told that it was ready for delivery. It was at that time that appellant signed the contract of December 16th in which he accepted delivery "without warranty of mechanical or other condition," agreed that any claim for defect should be no defense for non-payment of sums to become due, and that the seller should not be bound by any agreement or representation not contained in that written agreement.

We find no evidence of any fraudulent acts on the part of plaintiff. When, after its original delivery at the mine, the engine failed to work, plaintiff expended large sums for repairs; and when the equipment was again returned to defendant in February, 1940, it was, according to the testimony of the repairmen from the Fairbanks-Morse Company where the repairs were made, then completed and ready to run. Appellant admits that after this he made no effort to start the machinery or to operate it and that he made no request for help to get it started, and that in spite of these facts he refused to permit plaintiff to retake possession and likewise refused his demand for payment of the balance due.

While appellant in his briefs refers to testimony in conflict with the findings of the trial court, it is not within our province to consider same. There being evidence to sustain the findings and judgment, said judgment is affirmed.

Peek, J., and Thompson, J., concurred.